Kathryn WILSON, Individually and as Executrix of the Estate of Gerela Standifer, Deceased, and Melisha Sell, Deborah Wells and Dane Ballew, Appellants,

v.

Merrill WINSETT, M.D., Appellee.

No. 07–90–0271–CV.

Court of Appeals of Texas, Amarillo.

March 25, 1992.

Rehearing Overruled May 5, 1992.

John Judge, Amarillo, for appellants.

Gibson, Ochsner & Adkins, Thomas C. Riney and Kenneth S. Muncy, Amarillo, for appellee.

Before REYNOLDS, C.J., and BOYD and POFF, JJ.

REYNOLDS, Chief Justice.

In this medical malpractice action, the trial court rendered a take-nothing summary judgment upon concluding as a matter of law that Doctor Merrill Winsett, who examined Gerela Standifer at the request of the Texas Rehabilitation Commission so it could determine her rehabilitative potential, had no duty to inform her of, nor injured her by not disclosing, a particular finding in his examination. Agreeing, we will affirm.

When Gerela Standifer applied for Social Security disability benefits, the Texas Rehabilitation Commission requested that Doctor Merrill Winsett examine her for the purpose of furnishing to the Commission his opinion of her rehabilitative potential. By an appointment made by the Commission, Mrs. Standifer appeared for, and Doctor Winsett performed, the examination. During his examination, the doctor found, recorded, and included in his report to the Commission without elaboration or recommendation, the presence of a three centimeter hilar mass on Mrs. Standifer's right lung. Mrs. Standifer, who was treated by other doctors before and after Doctor Winsett's examination, did not request, nor did the doctor give her, any report of the examination.

Approximately four months later, another physician discovered that the mass, alleged to be consistent with bronchogenic carcinoma, had increased in size. Almost a year afterward, Mrs. Standifer died.

Kathryn Wilson, individually and as Executrix of the Estate of Gerela Standifer, Deceased, Melisha Sell, Deborah Wells, and Dane Ballew, collectively referred to as the executrix for simplicity, brought this medical malpractice suit against Doctor Winsett. The executrix alleged a physician-patient relationship was established by the doctor and the decedent by their conduct, and the doctor was negligent in breaching his duty to, in brief, inform the decedent of the presence of the hilar mass on her lung, resulting in her not seeking treatment for the carcinogenic mass which was the proximate cause of her death. Alternatively, the executrix alleged that Doctor Winsett owed the decedent a duty to conduct the examination in a manner not to cause harm to her, and that she was injured by the doctor's failure to warn, disclose, or advise her of the mass.

After answering, Doctor Winsett moved for summary judgment on the ground that no physician-patient relationship ever existed between him and the decedent and, therefore, as a matter of law, no duty of care arose between them. The executrix responded, urging unresolved fact issues regarding the physician-patient relationship and the doctor's duty resulting therefrom, and concerning his duty not to cause her harm.

Following a hearing, the trial court rendered a take-nothing summary judgment. The executrix challenges the judgment on two points of error, contending the court erroneously held (1) there was not a physician-patient relationship and Doctor Winsett owed no duty of ordinary care to the decedent, and (2) there was no injury to the decedent by the doctor.

At the outset, the executrix candidly concedes no disagreement with the law that a physician is liable for malpractice or negligence only when there is a physician-patient relationship as a result of a contract, express or implied, that the doctor will treat the patient with proper professional skill, and there is a breach of professional duty to the patient. *Salas v. Gamboa,* 760 S.W.2d 838, 840 (Tex.App.—San Antonio 1988, no writ); *Johnston v. Sibley,*

558 S.W.2d 135, 137 (Tex.Civ.App.—Tyler 1977, writ ref'd n.r.e.). The *Johnston* court held

> that where a doctor, as here, conducts an examination of an injured employee solely for the purpose of evaluating the employee's disability for the insurance carrier after a claim for workmen's compensation has been filed, and the doctor neither offers nor intends to treat, care for or otherwise benefit the employee and does not injure him during the course of the examination, the doctor is not liable for negligence in a suit for medical malpractice. His duty to use a professional standard of care in making the examination and in preparing the report runs only to the party requesting it.

558 S.W.2d at 137–38. However, the executrix disclaims the controlling effect of the *Johnston* holding to her action. She points out that Johnston was in the position of pursuing a claim adverse to the interests of the insurance company, but in this action, the interests of the decedent were not adverse to those of the Commission.

Yet, the executrix offers no supporting authority for her distinction. It is at once obvious that the *Johnston* holding as expressed is not predicated on an adversarial interest, and her distinction is not supported by the citation of *Caldwell v. Overton,* 554 S.W.2d 832 (Tex.Civ.App.—Texarkana 1977, no writ), for the recognition of a duty by a doctor who undertakes a physical examination to exercise the same reasonable degree of care, skill and diligence exercised by other physicians of his school of medicine in the same locality. The *Caldwell* court found the duty arose from the facts that a copy of the doctor's examination was furnished to the Industrial Accident Board where Mrs. Caldwell had a workmen's compensation claim pending, to her treating physician, to her employer's insurance carrier, and to her legal counsel, from which the court concluded

> that when a patient in doubt about his health and bodily condition requests and is supplied medical information, such as a diagnosis or a prognosis, the patient is entitled to expect the medical practitioner

to exercise the care and competence in reaching an opinion that the practitioner's profession requires and which the practitioner professes to have by engaging in medical practice.

*Id.* at 834. By its very language, the conclusion expresses a duty arising from a physician-patient relationship in which the patient requests and is supplied medical information.

▮ Contrastingly, in this cause the decedent neither selected Doctor Winsett nor submitted herself to the examination for the purpose of medical treatment, and she did not request the doctor to inform her of his findings. Instead, she submitted to the examination at the request of the Commission so it could be informed of her rehabilitative potential. Under similar undisputed facts, the authorities uniformly hold there is no physician-patient relationship between the doctor and the examinee and, consequently, the only duty owed by the doctor to the examinee is to not injure the examinee. *Dominguez v. Kelly*, 786 S.W.2d 749, 750–51 (Tex.App.—El Paso 1990, writ denied); *Johnston v. Sibley*, 558 S.W.2d at 137; *Lotspeich v. Chance Vought Aircraft*, 369 S.W.2d 705, 710 (Tex.Civ.App.—Dallas 1963, writ ref'd n.r.e.). Conformably, we hold that under the summary judgment evidence, there was no physician-patient relationship between Doctor Winsett and the decedent by which he owed her that relationship's duty of care.

Alternatively, the executrix contends Doctor Winsett injured the decedent by not informing her of the life-threatening hilar mass he discovered on her lung. The only authority cited in support of the contention is *Lloyd v. Ray*, 606 S.W.2d 545 (Tex.Civ. App.—Corpus Christi 1980, writ ref'd n.r.e.), offered for the holding that the doctor's "failure to diagnose and inform [appellant Lloyd] is as actionable as if he had acted affirmatively to produce an injury." *Id.* at 547. The holding is inapposite, for it followed the recitation of facts establishing an obvious physician-patient relationship, which is not present in this cause.

▮ We have not discovered any authority addressing the full scope of the duty not to injure during an examination conducted in the absence of a physician-patient relationship. Still, the *Lloyd* holding indicates that if no physician-patient relationship exists, a doctor does not violate the duty to not injure an examinee during an examination unless the doctor takes some affirmative action which produces an injury to the examinee. Indisputably, Doctor Winsett did not take any affirmative action which injured the decedent. Beyond that, there is no summary judgment proof that he incorrectly reported the decedent's rehabilitative potential to the Commission.

Then, under the circumstances in this cause, we are not willing to extend the doctor's duty to not injure an examinee during an examination to include a duty to inform a noninquiring examinee of the doctor's findings. This is not a novel precept, for given that a doctor does not owe a duty to the examinee to discover a disease when the doctor merely undertakes to examine the examinee at the request of, and only for a report to, a third party, *Lotspeich v. Chance Vought Aircraft*, 369 S.W.2d at 710, the logical corollary is that, as expressed in *Childs v. Weis*, 440 S.W.2d 104, 107 (Tex.Civ.App.—Dallas 1969, no writ), in adverting to the *Lotspeich* holding, "there was no legal basis for a cause of action against the doctor for failure to advise the [examinee] concerning findings made by the doctor during the examination." The executrix's two points of error are overruled.

Accordingly, the summary judgment is affirmed.