Linda ISBELL, Individually and as next friend of J.I. and K.I., Appellant,

v.

Charlotte Isbell RYAN, Appellee.

No. 14–97–01426–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Dec. 17, 1998.

Michael D. Miller, Henry S. Platts, Jr., Peter M. Kelly, Houston, for appellant.

Willard Tinsley, Matthew G. Pletcher, Houston, for appellee.

Before Justices JOHN HILL, BILL CANNON, and JOE L. DRAUGHN.[1]

**OPINION**

BILL CANNON, Justice (Assigned).

This is an appeal from a summary judgment. In three points of error, appellant Linda Isbell ("Linda"), contends that the tri-al court erred in granting summary judgment for appellee, Charlotte Ryan ("Charlotte"). We reverse and remand the case for trial.

Linda's husband is Michael Glenn Isbell who was previously married to Charlotte. From that marriage, Michael and Charlotte had one son, M.F.I. After Michael and Charlotte's divorce, the court appointed Charlotte managing conservator of M.F.I. and appointed Michael possessory conservator, with the right to possession of M.F.I. every other weekend and six weeks during the summer. Subsequently, Michael married Linda and they had two daughters, J.I. and K.I., who reside with Linda and Michael.

In early 1994, when M.F.I. was 12 years old, his aunt accused him of sexually molesting his four-year-old cousin, A.H. Children's Protective Services ("CPS") conducted an investigation and sent a form letter to Charlotte stating there was "reason to believe that [M.F.I. was] responsible for the sexual and physical abuse of [A.H]," but CPS did not plan to take further action unless CPS received another report. CPS did not contact the Isbells regarding the investigation into the allegations against M.F.I., nor did the Isbells ever receive a copy of the CPS letter sent to Charlotte. In the beginning of June 1995, M.F.I. stayed with the Isbells for his summer vacation. On June 1995, J.I., age five, and K.I., age three, told their mother that M.F.I. had sexually assaulted them.

Linda brought this suit against Charlotte alleging: (1) Charlotte failed to give Linda or Michael Isbell a copy of the letter from CPS regarding the results of their investigation concerning the allegation that M.F.I. had sexually abused his cousin; (2) Charlotte failed to tell Linda or Michael Isbell that CPS had concluded that there was reason to believe that M.F.I. had sexually abused his cousin; (3) Charlotte failed to tell Linda or Michael Isbell the results of the CPS investigation regarding M.F.I. and his cousin; (4) Charlotte misrepresented the results of the CPS investigation so as to lead Linda and Michael Isbell to believe there was no basis to the allegations; and (5) Charlotte failed to

---

**1.** Senior Justices Bill Cannon, Joe L. Draughn, and John Hill sitting by assignment.

warn Linda and Michael Isbell that M.F.I. was potentially dangerous to their minor daughters, K.I. and J.I.

Linda asserted that the above acts, omissions, and misrepresentations constituted negligence and gross negligence. Charlotte moved for summary judgment under Rule 166a and 166a(i), on the grounds that (1) she had no legal duty to warn Linda; and (2) if such a duty existed, there was no evidence that she breached her duty. After a hearing, the court granted the motion for summary judgment without specifying upon which grounds it relied. This appeal followed.

The standard for reviewing a motion for summary judgment under TEX. R. CIV. P. 166a is well established: (1) the movant must show that no genuine issue of material fact exists and that it is entitled to summary judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and (3) every reasonable inference must be resolved in the nonmovant's favor. *See Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex.1997) (citing *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985)). Where, as here, the summary judgment does not specify the grounds upon which summary judgment was granted, we will affirm the judgment if any of the theories advanced in the motion are meritorious. *See State Farm Fire & Casualty Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex.1993).

The standard of review for a "no evidence" motion for summary judgment under TEX R. CIV P. 166a(i) is less settled than standard motions for summary judgment. Because Rule 166a(i) is Texas's adoption of the federal rule for summary judgment motions, we look to federal case law dealing with the appropriate standard of review.

■■■ The United States Supreme Court in *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), discussed the federal standard for reviewing summary judgment holdings. *See id.* at 250, 106 S.Ct. 2505. There, the Court concluded that the summary judgment standard mirrored the standard used when reviewing di-

rected verdicts. *See id.* We review the evidence in the light most favorable to the respondent against whom the no-evidence summary judgment was rendered, disregarding all contrary evidence and inferences. *See Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 1799, 140 L.Ed.2d 939 (1998). A no-evidence summary judgment is improperly granted if the respondent counters with more than a scintilla of probative evidence to raise a genuine issue of material fact. *See* TEX.R. CIV. P. 166a(i); *see also Havner*, 953 S.W.2d at 711; *Taylor-Made Hose, Inc. v. Wilkerson*, No. 04–97–01025–CV, 1998 WL 553443, at *2 (Tex. App.—San Antonio Aug.31, 1998, no pet. h.). Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise of suspicion" of a fact. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983). More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Havner*, 953 S.W.2d at 711.

■■■ Rule 166a(i) states "[t]he court must grant the motion [for summary judgment] unless the respondent produces summary judgment evidence raising a genuine issue of material fact." *See* TEX. R. CIV. P. 166a(i). Under the federal counterpart, a fact is "material" only if it affects the outcome of the suit under the governing law. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Such a determination can only be made by reliance on the substantive law, and only those facts identified by the substantive law can be considered material. *See id.* A material fact is "genuine" if the evidence is such that a reasonable jury could find the fact in favor of the non-moving party. *See id.* By the same token, if the evidence is not significantly probative, the fact issue is not genuine. *See id.*

■■■ A cause of action for negligence consists of three essential elements: (1) a legal duty owed by one party to another; (2) a breach of that duty; and (3) damages proximately caused by that breach. *See Greater*

*Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex.1990). Duty is the threshold inquiry in a negligence case. *See id.* The existence of a duty is a question of law for the court to decide based on the specific facts of the case. *See Mitchell v. Missouri–Kansas–Texas R.R.,* 786 S.W.2d 659, 662 (Tex. 1990). To determine whether the defendant is under a duty, we consider several interrelated factors, including the risk, foreseeability, likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant. *See Greater Houston Transp.,* 801 S.W.2d at 525. Of these factors, the foremost consideration is whether the risk is foreseeable. *See El Chico Corp. v. Poole,* 732 S.W.2d 306, 311 (Tex. 1987). Foreseeability means that the actor, as a person of ordinary intelligence, should have anticipated the dangers that his negligent act created for others. *See Nixon,* 690 S.W.2d at 549–50.

■■■ In her first two points of error, Linda argues that the trial court erred in granting the motion for summary judgment because Charlotte should have foreseen the general nature of the harm. Linda further argues that the trial court erred because the foreseeability created a duty, as a matter of law, for Charlotte to accurately inform and warn Linda of M.F.I.'s sexual proclivities towards children and of the conclusions of the CPS investigation. Linda argues Charlotte could foresee that M.F.I. was a threat to young children because Charlotte was the managing conservator of M.F.I., the only parent receiving information from CPS, and the only one with knowledge of the prior molestation incident and the results of the investigation. According to Linda, this created a duty for Charlotte to provide Linda with accurate and sufficient warning that CPS had reason to believe M.F.I. had molested A.H.

■■■ As a general rule, defendants have no duty to prevent the criminal acts of a third party who does not act under defendants' supervision or control. *See Haight v. Savoy Apartments,* 814 S.W.2d 849, 853 (Tex. App.—Houston [1st Dist.] 1991, writ denied).

This general rule does not apply in situations where a special relationship exists between the actor and the third person. *See Otis Eng'g Corp. v. Clark,* 668 S.W.2d 307, 309 (Tex.1983). One such exception to the rule is the parent-child relationship. *See Greater Houston Transp.,* 801 S.W.2d at 525 (listing employer-employee, contractor-contractee, and parent-child relationships as exceptions to the general rule).

In support of her claim that the foreseeability was sufficient to establish that Charlotte had a legal duty to warn, Linda cites *Rodriguez v. Spencer,* 902 S.W.2d 37 (Tex. App.—Houston [1st Dist.] 1995, no writ). In *Rodriguez,* Paul Broussard was beaten and stabbed to death as the result of a "gay bashing" incident by a minor, Brian Spake. Broussard's mother, Nancy Rodriguez, brought a negligence suit against Spake's mother, Mary Anne Spencer, claiming the parent-child relationship imposed a parental duty to supervise, control, and discipline the child. *Id.* at 40. The trial court granted summary judgment, and Rodriguez appealed.

The court of appeals held several factors are to be considered in determining the existence of a duty including "risk, foreseeability, the likelihood of injury weighed against the social utility of the defendant's conduct, the magnitude of the burden of guarding against the injury, and consequences of placing that burden on the defendant." *Id.* at 41. The most important factor, however, is foreseeability. *See id.* To establish liability, the appellate court held that "parental anticipation of danger" is a necessary element. *Id.* at 42. The basis of a parent's duty to third persons is established through the parent's knowledge, consent, sanction, or participation in the child's activities, including the child's "violent tendencies." *Id.* The *Rodriguez* court held that "[a]ctual knowledge is not required *if the parent should, under the circumstances, reasonably anticipate* the consequences of his or her actions." *Id.* (emphasis in original).

Charlotte agrees that *Rodriguez* controls, however, responds that she had no legal duty because the degree of foreseeability to impose such a duty, as proscribed in *Rodriguez,* was not met. Specifically, Charlotte argues

that *Rodriguez* should be narrowly interpreted as holding that a parental duty to third parties only arises when the parent knows of, consents to, sanctions, or participates in the child's particular activities that give rise to the suit. In support, Charlotte relies on *Childers v. A.S.*, 909 S.W.2d 282 (Tex.App.— Fort Worth 1995, no writ).

In *Childers*, the defendants, A.S. and her parents, the Miksells, were neighbors of the plaintiffs, Merryl Childers and her daughter, J.C. In her deposition, J.C. testified that A.S. frequently came to the Childers' house with a third little girl and forced J.C. to play sexual games. J.C. claimed that if she did not play the games with A.S. and the other girl, they would beat her up. The games were always played in the Childers' home and often with J.C.'s parents at home, although not supervising the girls. A.S. testified that J.C.'s mother discovered the girls activities and phoned A.S.'s mother to discuss the situation. After questioning A.S. about the games, her mother told her not to go the Childers' house or to play the games anymore. A.S. testified that she defied her mother's instructions and continued to go the Childers' house without her mother's knowledge.

The Childers sued the Miksells for five specific allegations of negligence. Specifically, the Childers alleged: (1) failure to adequately supervise the activities and conduct of A.S.; (2) failure to report the acts of abuse to the Texas Department of Human Services and local authorities; (3) failure to provide an environment for J.C. free of mental and physical abuse; (4) failure to exercise reasonable care in maintaining family relations of J.C. and J.C.'s parents when the Miksells knew or should have known about the acts A.S. inflicted on J.C.; and (5) failure to exercise reasonable care in providing A.S. with psychotherapy and other necessary medical treatment. *See id.* at 286. The Miksells moved for summary judgment on the ground that they owed no duty to appellant or her daughter under appellant's five specific allegations of negligence. *See id.* at 286. The trial court granted the summary judgment and the Childers appealed.

The court of appeals followed *Butcher v. Scott*, 906 S.W.2d 14 (Tex.1995) (holding that to be liable as an owner or occupier of the property where the molestation occurred, the defendant must have a right to control the premises), and *Rodriguez* in determining whether the Miksells owed the Childers a duty under their specific allegations of negligence. *See Childers,* 909 S.W.2d at 289. In light of the evidence that (1) the sexual acts between A.S. and J.C. took place in the Childers' home; (2) the Miksells were neither present nor supervising the girls; and (3) Mrs. Childers was often home when the sexual games were played, the court held that the Miksells did not owe the Childers a duty as alleged in the Childers' pleading. *See id.* at 286.

■ Charlotte incorrectly applies *Childers* to *Rodriguez* in arguing for a narrower interpretation of foreseeability. *Childers* does not say that a general parental duty to protect only arises when the defendant parents had control of the premises or had knowledge of, consented to, sanctioned, or participated in the child's specific activities forming the basis of the particular lawsuit. We are of the opinion that the reason the court held the defendants in *Childers* had no duty was because of the specificity of the allegations plead by the plaintiffs. The *Childers* court was not strictly interpreting *Rodriguez*. To the contrary, *Rodriguez,* if read in total, holds that parents have a duty to protect third parties from the violent tendencies of their children as long as the parent could have reasonably anticipated the danger of the child's tendencies. *See Rodriguez,* 902 S.W.2d at 42. The *Rodriguez* court went into a lengthy examination of the evidence to determine whether the child's act was foreseeable to his mother. The summary judgment evidence established that Spencer maintained curfews and discipline for Spake. *See. id.* at 44. She never knew her son to lie, had never seen him with a weapon, knew him as honest, forthright, reliable and dependable. *See id.* Spencer investigated her son's acquaintances and warned him to stay away from at least one individual involved in the attack. *See id.* Finally, Spakes's mother had never known him to harbor violent tendencies towards homosexuals. *See id.* The *Rodriguez* court

concluded that it was not foreseeable to Spencer that her son would have committed this crime because Spake had never before demonstrated a propensity to act in such a heinous manner. *See id.* at 45 Thus, Spencer did not owe Rodriguez a legal duty to control her son. *See id.*

This court agrees that *Rodriguez* controls the case at bar with regard to the issue of foreseeability in the context of the parent-child relationship as it gives rise to a legal duty to protect third persons. We disagree, however, that the *Childers*court narrowly interpreted the foreseeability element of duty, as set forth in *Rodriguez,* as narrowly as the appellee argues. A more accurate statement of the *Rodriguez* rule is that the basis of the parent's duty to third persons is the parent's knowledge, consent, sanction, or participation in the child's tendencies to commit bad acts. *See, e.g., Prather v. Brandt,* 981 S.W.2d 801, 806–07 (Tex.App.—Houston [1st Dist.] 1998, no pet. h.) ("A parent may be liable if the parent negligently allows his child to act in a manner likely to harm another … or if he does not restrain a child known to have dangerous tendencies.").

The evidence in this case shows that Charlotte did not negate the issues of misrepresentation and foreseeability. A.H. accused M.F.I. of molesting him which led to a CPS investigation. While the CPS report stated it would take no further action against M.F.I., a fact question remains relating to M.F.I.'s tendency to molest other children. Based upon the letter from CPS and her knowledge of the situation by virtue of her position as M.F.I.'s mother and A.H.'s aunt, Charlotte could have reasonably anticipated the danger of allowing M.F.I. to go to the Isbell home without giving the Isbells adequate warning of the possibility of danger to M.F.I.'s half-sisters. We sustain the first and second points of error.

■  In her third point of error, Linda argues the trial court erred in granting the summary judgment because a fact question exists regarding Charlotte's breach of duty. An examination of the record reveals that in early 1994 A.H. and his mother, Holly Hewitt, accused M.F.I. of sexually molesting A.H. Charlotte testified that as soon as she was aware of the allegations being made by A.H. and Holly, her current husband Steve called her ex-husband, Michael, and related the allegations to him. Further, Charlotte testified that when she received the CPS report, she contacted the Isbells with that information. Finally, Charlotte testified that upon relating the findings of CPS to Michael Isbell, they were both outraged at Charlotte's sister, and even after the CPS letter, Charlotte did not believe M.F.I. had molested A.H.

Linda testified, however, that she learned of the accusations about M.F.I. before her husband. She says the first time she heard the allegations against M.F.I. was June of 1994, when she drove to Charlotte's house to pick up M.F.I. for a three-week summer visit. She testified that Charlotte explained to her that A.H.'s mother had called CPS alleging M.F.I. had molested A.H. and CPS was investigating, but that A.H.'s mother was crazy and was just trying to harass the family. Linda then testified that she drove home and related the information to her husband, M.F.I.'s father, who had been unaware of the accusations against M.F.I. and the CPS investigation. Finally, Linda testified that upon Charlotte's arrival at the Isbell home to pick up M.F.I. at the end of his visit, Charlotte told the Isbells that CPS had concluded their investigation finding M.F.I. had done nothing wrong. There is no evidence in the record that M.F.I. committed any further bad acts until he molested his half-sisters in June of 1995. Based on the highly conflicting testimony, the fact that Linda claims Charlotte misrepresented the findings of the CPS investigation, and the fact that the Isbells claim to have relied on the alleged misrepresentation which lead to the molestation of J.I. and K.I. in June of 1995, we find a fact question exists as to whether Charlotte breached her duty to warn the Isbells of M.F.I.'s propensity to molest children and whether Charlotte misrepresented the contents of the CPS report. We sustain appellant's third point of error, reverse the summary judgment, and remand this case for trial.