Simon **RAMIREZ** and Cynthia Ramirez, Appellants,

v.

Dr. Jose **CARRERAS**, Appellee.

No. 13–98–517–CV.

Court of Appeals of Texas, Corpus Christi.

Jan. 6, 2000.

Esther Cortez, McAllen, for Appellants.

Ronald G. Hole, Micaela Alvarez, Law Offices of Ronald G. Hole, McAllen, for Appellee.

Before Chief Justice SEERDEN and Justices DORSEY and CHAVEZ.

## OPINION

Opinion by Justice DORSEY.

■ This case concerns the scope of a physician's duty when examining one who is not a patient. We hold that when a physician examines a person for the benefit of a third party and no physician-patient relationship exists, the only duty owed by the physician is the duty not to injure the examinee. Expert testimony is not required in order to raise a fact question on whether that duty is breached.

Simon Ramirez filed a worker's compensation claim, and the worker's compensation insurance carrier hired Dr. Carreras to perform an impairment rating on him. Ramirez contends Dr. Carreras injured him while performing the exam. He sued for medical negligence, common law negligence, and assault and battery. Summary judgment was granted for Dr. Carreras on the negligence claims, which were severed from the other claims, thus making the judgment appealable. Ramirez appeals the portion of the summary judgment dismissing his cause of action for common law negligence.

■ Summary judgment must be granted pursuant to Rule 166a(i) if in responding to a properly urged no-evidence motion, the nonmovant does not produce some evidence on each element of every claim or defense upon which he carries the burden of proof. See TEX.R. CIV. P. 166a(i); *Zapata v. The Children's Clinic*, 997 S.W.2d 745, 747 (Tex.App.—Corpus Christi 1999, no pet. h.). Some evidence is that which would enable reasonable and fair-minded people to differ in their conclusions, but creates more than a suspicion or surmise. *Id.* In reviewing the grant of a no-evidence summary judgment, we review the evidence in the light most favorable to the respondent and disregard all contrary evidence and inferences. *Id.; see also Moore v. Kmart Corp.*, 981 S.W.2d 266,

269 (Tex.App.—San Antonio 1998, pet. denied); Judge David Hittner and Lynne Liberato, *No–Evidence Summary Judgments Under the New Rule*, in STATE BAR OF TEXAS PROF. DEV. PROGRAM, 20 ADVANCED CIVIL TRIAL COURSE D, D–5 (1997); *accord Bomar v. Walls Regional Hosp.*, 983 S.W.2d 834, 840 (Tex.App.—Waco 1998, no pet.); *Isbell v. Ryan*, 983 S.W.2d 335, 338 (Tex.App.—Houston [14th Dist.] 1998, no pet.); *Heiser v. Eckerd Corp.*, 983 S.W.2d 313, 316 (Tex.App.—Fort Worth 1998, no pet.); *Jackson v. Fiesta Mart, Inc.*, 979 S.W.2d 68, 70 (Tex.App.—Austin 1998, no pet.).

The parties agree that the elements of common law negligence are: (1) the existence of a duty owed by the defendant to the plaintiff; (2) the breach of that duty; and (3) that the breach of the duty was the proximate cause of the plaintiff's injuries. *Silva v. Spohn Health System Corp.*, 951 S.W.2d 91, 93–94 (Tex.App.—Corpus Christi 1997, writ denied). Ramirez argues that Dr. Carreras breached the duty to perform the examination without injuring him. Dr. Carreras argues that Ramirez has produced no evidence on the elements of breach and causation. We hold that Ramirez's cause of action is for common law negligence for breach of the duty not to injure, and that Ramirez has presented some evidence on each element.

■ The duty not to injure is entirely different in scope and application from the standard of care in medical negligence causes of action. In medical negligence cases, the physician's conduct is judged against the "accepted standard of medical care," which is what a reasonable, competent, similarly-situated medical professional would do. *See Chambers v. Conaway*, 883 S.W.2d 156, 158 (Tex.1993); *Hood v. Phillips*, 554 S.W.2d 160, 165 (Tex.1977); *see also* MICHAEL PENICK, 44 TEXAS PRACTICE: MEDICAL MALPRACTICE § 1.16, at 18–19, § 17.4, at 268 (1997). The plaintiff must establish that standard, typically through expert testimony. *Whittley v. Heston*, 954 S.W.2d 119, 122 (Tex.App.—

San Antonio 1997, no pet.); *Chopra v. Hawryluk*, 892 S.W.2d 229, 233 (Tex. App.—El Paso 1995, writ denied).

■ However, before the issue of "standard of care" arises in a medical negligence cause, it must first be determined whether a relationship existed between the doctor and patient that triggered the duty for the doctor to exercise professional judgment and care. The existence or nonexistence of this duty is a preliminary question of law. *St. John v. Pope*, 901 S.W.2d 420, 424 (Tex.1995); *Bird v. W.C.W.*, 868 S.W.2d 767, 769 (Tex.1994) (holding that the existence of duty of health professional is question of law); *accord Salas v. Gamboa*, 760 S.W.2d 838, 840 (Tex.App.—San Antonio 1988, no writ) (holding that before reaching question of standard of care, court must decide the question of law, whether the defendant owes a duty). When that relationship does not exist, Texas law is clear that the physician cannot be liable for professional negligence because he has no duty to exercise professional care. *See e.g., St. John*, 901 S.W.2d at 423 (holding that on-call emergency room physician could not be sued for malpractice due to lack of physician-patient relationship where physician called by emergency room staff gave his opinion that patient should be transferred to another facility); *Almaguer v. Jenkins*, 9 S.W.3d 835, 837–38 (Tex.App.—San Antonio, 1999, no pet. h.) (holding that physician owes no duty to examinee because no professional relationship exists when physician merely examines person for worker's compensation report); *Ortiz v. Shah*, 905 S.W.2d 609, 611 (Tex.App.—Houston [14th Dist.] 1995, writ denied) (holding that on-call emergency room surgeon who did not arrive at hospital before patient died from gunshot wound could not be sued for medical malpractice because no physician-patient relationship was established); *Wilson v. Winsett*, 828 S.W.2d 231, 232 (Tex.

App.—Amarillo 1992, writ denied) (holding physician who examined applicant for social security benefits and discovered mass but failed to disclose its existence to examinee not liable for medical negligence because no physician-patient relationship); *Fought v. Solce*, 821 S.W.2d 218, (Tex. App.—Houston. [1st Dist.] 1991, writ denied) (holding that no physician-patient relationship existed between on-call orthopedic specialist who was twice consulted while patient was in emergency room and refused to come in and treat patient); *Salas*, 760 S.W.2d at 839–40 (holding no physician-patient relationship when plaintiff alleged that he took his baby into doctor's office when baby was turning blue and doctor refused to treat, though evidence controverted that doctor knew of emergency). In other words, "the duty to treat the patient with proper professional skill flows from the consensual relationship between the patient and physician, and only when that relationship exists can there be a breach of a duty resulting in medical malpractice." *St. John*, 901 S.W.2d at 423.

■ Texas courts have held that the relationship between Dr. Carreras and Mr. Ramirez is not a physician-patient relationship. *See Johnston v. Sibley*, 558 S.W.2d 135, 137–38 (Tex.Civ.App.—Tyler 1977, writ ref. n.r.e.) (holding that when a doctor conducts an examination for the sole purpose of evaluating the employee's disability for a worker's compensation insurance carrier, no physician-patient relationship is created); *see also Wilson*, 828 S.W.2d at 232 (holding no physician-patient relationship existed where physician examined applicant for benefit of social security department); *Lotspeich v. Chance Vought Aircraft*, 369 S.W.2d 705, 710 (Tex. Civ.App.—Dallas 1963, writ ref'd n.r.e.) (holding where doctor examined patient for benefit of employer, employee had "no legal right to demand that he exercise any care whatever in conducting the examination, except to avoid injuring her"); *Armstrong v. Morgan*, 545 S.W.2d 45, 47 (Tex.

Civ.App.—Texarkana 1976, no writ) (holding that where physician conducted examination on employee for benefit of employer, doctor owed a "duty not to injure [the examinee] physically or otherwise"); *Dominguez v. Kelly*, 786 S.W.2d 749, 751 (Tex. App.—El Paso 1990, writ denied) ("In ... cases where no physician-patient relationship exists, the doctor's only duty is to conduct the examination in a manner not to cause harm to the person being examined.").

In the case most directly on point, *Johnston v. Sibley*, the Tyler Court of Appeals held that where a doctor performs a worker's compensation impairment examination solely for the benefit of the insurance company, no physician-patient relationship exists between the doctor and the examinee. 558 S.W.2d at 137–38. In *Johnston*, Dr. Sibley was hired by an insurance company to assess Mr. Johnston's condition in connection with a worker's compensation claim. *Id.* at 135–36. Johnston claimed that Dr. Sibley negligently reported to the insurance company that he suffered from no disability when in fact he was suffering from at least permanent partial disability and sought damages including recoupment of the worker's compensation benefits he was denied as a result of Sibley's diagnosis. *Id.* Sibley moved for summary judgment on the grounds that no doctor-patient relationship existed and therefore, he owed no legal duty to Johnston. *Id.* at 136. In the absence of Texas law, the Tyler Court of Appeals relied on authority from other states in holding that when a doctor examines a person for the sole purpose of a worker's compensation assessment, no doctor-patient relationship exists and the doctor's only duty is to conduct the examination in a manner not to cause harm to the person being examined. *Id.* at 137. The court held that the duty to use professional care in making the examination and in preparing the report ran only to the party requesting the report. *Id.* at 138.

Applying the law to the facts of this case, we hold that no physician-patient relationship existed between Ramirez and Dr. Carreras and thus, Ramirez cannot hold Dr. Carreras liable for professional negligence. Dr. Carreras had no duty to conduct the examination according to the accepted standards of medical care. *See Johnston*, 558 S.W.2d at 137–38. Consequently, Ramirez would be unable to hold Carreras liable for failing to adhere to the accepted professional standards. *Id.*

Even though a doctor is not liable for professional negligence when examining a nonpatient, he remains liable for any injury he may cause during the procedure. This has been referred to as the "duty not to injure." *Johnston*, 558 S.W.2d at 137; *see also* MICHAEL PENICK, 44 TEXAS PRACTICE: MEDICAL MALPRACTICE § 1.3, at 4–5 (1997). While the scope of the duty to not injure has not been fully explicated, it has been said that the duty not to injure is violated only by an affirmative act which causes injury. *See Johnston*, 558 S.W.2d at 137; *Penick, supra; Salas*, 760 S.W.2d at 840; *Lotspeich*, 369 S.W.2d at 710. Thus, when a physician examines a nonpatient for the benefit of a third party, the physician is not required to use professional medical care, and thus may not be held liable for professional negligence, but is required to perform the examination in such a manner so as not to injure the examinee. Accordingly, we hold that Ramirez has established that Dr. Carreras owed him the duty to conduct the examination in a manner so as not to injure him.

We now determine whether Ramirez has produced some evidence that Dr. Carreras breached this duty. Ramirez attached to his summary judgment response his own deposition testimony stating that Dr. Carreras had him perform a variety of movements where the doctor placed his hand on Ramirez's back and pushed him down further than he could go without extreme pain. Ramirez described one of the tests as follows:

Q. What happened when you weren't able to bend very far?

A. [Dr. Carreras] kept putting his hand on my back saying you need to go down a little bit further or it is going to be invalid.

Q. And can you describe for me the pressure that you felt on your back?

A. It was a lot of pressure. . . .

Q. What happened then once you weren't able to bend very far?

A. I was stuck there. I was having problems coming back up. . . . I didn't want to move because I could feel the pain. I thought if I went up I was going to make something worse.

Q. So about how long would you say you were stuck there?

A. He grabbed me from my shoulders and helped me come back up. . . .

Q. Once you straightened back up, then what was the next thing . . .

A. We had to do it again. I think it was twice each movement.

Q. And did you have the same results the second time?

A. Yes, ma'am.

Q. After the second time, then what happened?

A. We had to do the one where you bend backwards. . . . And that was just as bad, because I had to go back, and there was no way I was going to go back.

Q. Did the same thing happen as far as your bending backwards and Dr. Carreras assisting you?

A. Yes, ma'am.

Q. And did you do that twice as well?

A. I believe so.

We find this amounts to some evidence that Dr. Carreras breached his duty not to injure Ramirez while performing the examination.

■ Ramirez also was required to produce some evidence that Dr. Carreras' breach of duty was the proximate cause of his injuries. Ramirez had undergone a spinal fusion before he was examined by Dr. Carreras. After the examination, he experienced severe pain and bleeding into the muscles in the area of the fusion. Ramirez produced deposition testimony of his treating doctor, Dr. Pechero, who stated that before being examined by Dr. Carreras, Ramirez was doing well, but after it, he complained of severe pain to the lumbosacral spine. Upon examining Ramirez after Dr. Carreras' exam, Pechero wrote in his notes that an MRI revealed bleeding into Ramirez's muscles that was "probably secondary to the range of motion testing" performed by Dr. Carreras. Dr. Pechero sent Ramirez to another doctor for pain treatments. Viewing the evidence in the light most favorable to Ramirez and disregarding all contrary evidence and inferences, we find Dr. Pechero's testimony is more than a scintilla of probative evidence that Dr. Carreras' breach of the duty not to injure proximately caused injury to Ramirez.

■ Carreras points to other portions of Pechero's testimony where he said that the testing *could have been* a cause of the injury rather than *was* the cause of the injury. However, we disregard that evidence, and review the remaining evidence in the light most favorable to Ramirez. *See Zapata*, 997 S.W.2d at 747; *see also Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997); *Moore*, 981 S.W.2d at 269. The question in a no-evidence motion response is not whether the movant's evidence is controverted, but whether any evidence exists on each element of the cause of action.

■ Dr. Carreras argues that Ramirez was required to produce expert testimony to create a fact issue regarding whether Carreras breached the duty not to injure Ramirez. We disagree. Ramirez is not required to show that Dr. Carreras violated a standard of care. The duty not to injure is a strict duty which arises by virtue of the relationship between the phy-

sician and the nonpatient-examinee. Whenever a doctor examines a nonpatient, the minimal duty on the examining physician is to take care not to injure the subject. Ramirez has produced some evidence that (1) Dr. Carreras had a duty not to injure him, (2) that Dr. Carreras breached that duty by physically manipulating him during the exam, and (3) that Dr. Carreras' manipulations caused injury to his back. That is enough.

■■■ Finally, Carreras argues that Ramirez's cause of action is governed by the Texas Medical Liability Insurance Improvement Act, which imposes various procedural and other requirements. *See* Tex. Rev.Civ. Stat. Ann. art. 4590i § 1.03(a)(4) (Vernon Supp.1999) (herein "the Act"). We disagree. The Act only applies to "health care liability claims," defined as:

> a cause of action against a . . . physician for treatment, lack of treatment, or *other claimed departure from accepted standards of medical care or health care or safety* which proximately results in injury to or death of the patient, whether the patient's claim or cause of action sounds in tort or contract.

*Id.* (emphasis added). Because a cause of action for breach of the duty not to injure is not a claim that the physician departed from an "accepted standard" within the health care industry, the Act is inapplicable. Moreover, the Texas Supreme Court has noted that the Act does not apply to claims where no physician-patient relationship exists. *See St. John,* 901 S.W.2d at 423 (citing *Lopez v. Aziz,* 852 S.W.2d 303, 305 (Tex.App.—San Antonio 1993, no writ), which holds that the Medical Liability and Insurance Improvement Act implicitly recognizes that a physician-patient relationship must exist before a "health care liability claim" may be asserted).

Accordingly, we disagree with the Houston court in *Weathersby v. MacGregor Medical Assoc.,* 983 S.W.2d 82, 87 n. 1 (Tex.App.—Houston [14th Dist.] 1998, no pet.) (holding that claim for ordinary negligence against health care provider falls "squarely within the Medical Liability and Insurance Improvement Act"). In *Weathersby,* the plaintiff alleged that she suffered a compression fracture in her spine as a result of a Dynatron test administered by a doctor during a post-hire employment physical. *Id.* at 84. She sued on grounds of common law negligence. *Id.* at 85. The doctor moved for summary judgment, proffering his own affidavit stating that his treatment did not cause the plaintiff's injuries and that the normal administering of the Dynatron test would not cause the injuries sustained by plaintiff. *Id.* Expressly refusing to rule on whether Weathersby's cause of action was for medical negligence or common law negligence, the court held that regardless of which it was, the doctor successfully negated the element of causation. *Id.* at 87.

Unlike *Weathersby,* where the plaintiff's burden was to controvert the defendant's summary judgment evidence, Ramirez's burden is only to present some evidence on each element of his cause of action. He offered testimony from both his own and his treating physician's depositions that is sufficient to survive a no-evidence challenge. Accordingly, we affirm the trial court's summary judgment as it relates to plaintiff's medical negligence cause of action, reverse the trial court's summary judgment as it relates to plaintiff's common law negligence cause of action, and remand this cause to the trial court for further proceedings consistent with this opinion.