COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI


___________________________________________________________________

NUMBER 13-98-152-CV



RAMONA ALVAREZ, 

LUIS ALVAREZ, ROXANNE 

ALVAREZ, INDIVIDUALLY AND 

AS REPRESENTATIVE OF THE 

ESTATE OF MICHAEL HARWOOD, Appellants,


v.



DRISCOLL FOUNDATION 

CHILDREN'S HOSPITAL, ET AL., Appellees.

___________________________________________________________________


AND


___________________________________________________________________

NUMBER 13-99-088-CV



RAMONA ALVAREZ, 

LUIS ALVAREZ, ROXANNE 

ALVAREZ, INDIVIDUALLY AND 

AS REPRESENTATIVE OF THE 

ESTATE OF MICHAEL HARWOOD, Appellants,


v.



TOM MCNEIL, M.D., 

EDGAR CORTES, M.D., F.A.A.P., 

AND WILLIAM DIRKSEN, M.D.
, Appellees.

___________________________________________________________________


On appeal from the 117th District Court


of Nueces County, Texas.


___________________________________________________________________


O P I N I O N



Before Justices Dorsey, Chavez, and Rodriguez


Opinion by Justice Dorsey



 This is a consolidated appeal of two causes stemming from the
same set of facts.(1) This controversy arose from the circumstances
surrounding the death of an infant, Michael Harwood. Roxanne,
Ramona and Ruiz Alvarez,(2) the infant's mother, grandmother and
grandfather, sued Driscoll Children's Hospital and various doctors and
hospital care groups for negligent conduct they contend caused the
infant's death. Roxanne also contends that, in an effort to cover up
their own negligence, some or all of the defendants made false
accusations that she intentionally caused Michael's death by
suffocating him. On those grounds, she also brought causes of action
for malicious prosecution, intentional infliction of emotional distress and
civil conspiracy.

 Prior to trial, the court granted summary judgment that Alvarez
take nothing on all intentional tort causes of action, and on the
negligence claims against two of the doctors. That portion of the
lawsuit was severed, and the summary judgment was appealed. While
that summary judgment was on appeal, the remaining defendants and
causes of action went to trial. The jury found no liability on the part of
any defendant. Accordingly, the trial court entered judgment that the
plaintiff take nothing.

 The summary judgment appeal remained pending with this Court
during the trial of the other issues. After the trial ended, this Court, in
part, reversed the summary judgment and remanded certain causes of
action to the trial court. Alvarez v. Anesthesiology Associates, 967
S.W.2d 871 (Tex. App.--Corpus Christi 1998, no pet.) On remand, the
trial court granted a successive summary judgment on the remanded
portion of the case. In this consolidated appeal, Alvarez challenges both
the final judgment entered upon the jury's verdict, and the final
summary judgment entered on the remanded portion of the case.

Part One: Challenge to the Jury's Verdict


 By their first point of error, Alvarez contends that the evidence was
factually and legally insufficient to support the jury's findings. If there
is some evidence to support the finding, it is sufficient as a matter of
law; any further challenges go to the weight to be accorded the
evidence. Leitch v. Hornsby, 935 S.W.2d 114, 118 (Tex. 1996). The
evidence will only be held to be legally insufficient when the record
shows either: (1) a complete absence of evidence of a vital fact; (2) the
court is barred by rules of law or evidence from giving weight to the
only evidence offered to prove a vital fact; (3) the evidence offered to
prove a vital fact is no more than a mere scintilla of evidence; or (4) the
evidence establishes conclusively the opposite of a vital fact. Juliette
Fowler Homes, Inc. v. Welch Assocs., 793 S.W.2d 660, 666 n.9 (Tex.
1990). To be legally sufficient, the evidence must supply a reasonable
basis on which reasonable minds may reach different conclusions about
the existence of the vital fact. Orozco v. Sander, 824 S.W.2d 555, 556
(Tex. 1992).

 In reviewing the factual sufficiency of the evidence, we examine
all the evidence, and will set aside a verdict only if the evidence is so
weak or the finding is so against the great weight and preponderance
of the evidence that it is clearly wrong and unjust. Cain v. Bain, 709
S.W.2d 175, 176 (Tex. 1986). The evidence is "insufficient" if it is so
weak, or the evidence to the contrary is so overwhelming, that the
answer should be set aside and a new trial ordered. Jaffe Aircraft Corp.
v. Carr, 867 S.W.2d 27, 29 (Tex. 1993).

 Alvarez challenges the following findings of the jury:

 (1) that no defendant proximately caused Michael's injury;

 (2) that Ramona Alvarez caused Michael's injury;

 (3) that Michael suffered no damages;

 (4) that Ramona suffered no damages; and

 (5) that no defendant committed gross negligence.

 After carefully reviewing the record, we find a wealth of evidence
to support the jury's findings that none of the defendants caused the
injury, and sufficient evidence for its finding that Roxanne's negligent
or intentional conduct, in fact, caused the injury. Because we find the
evidence sufficient to support those findings, the question of the
sufficiency of the evidence supporting damages becomes moot. 
Further, the jury's failure to find ordinary negligence on the part of any
defendant necessarily means that it could not have found gross
negligence. A finding of ordinary negligence is a prerequisite to a
finding of gross negligence. Hall v. Stephenson, 919 S.W.2d 454, 467
(Tex. App.--Fort Worth 1996, writ denied); Shell Oil Co. v. Humphrey,
880 S.W.2d 170, 174 (Tex. App.--Houston [14th Dist.] 1994, writ
denied); Trevino v. Lightning Laydown, Inc., 782 S.W.2d 946, 949 (Tex.
App.--Austin 1990, writ denied). We overrule Alvarez's first point of
error.

 By her second, third and fourth issues, Alvarez contends that the
trial court erroneously admitted expert testimony. Specifically, she
argues that Dr. Reece and Dr. Norton should not have been allowed to
give their opinion that Roxanne Alvarez murdered her son in an episode
of "Munchausen syndrome by proxy" because they were not experts in
the psychiatric disorder. We disagree.

 We will not reverse a trial court's decision regarding whether to
admit expert testimony absent an abuse of discretion. United Blood
Servs. v. Longoria, 938 S.W.2d 29, 30-31 (Tex. 1997). Texas Rule of
Evidence 702 states that a witness qualified as an expert by knowledge,
skill, experience, training, or education may give an opinion or
otherwise testify regarding scientific, technical, or other specialized
knowledge if it will assist the trier of fact to understand the evidence or
to determine a fact in issue. Tex. R. Evid. 702. The trial court must
determine if the proposed expert has "knowledge, skill, experience,
training, or education" that would "assist the trier of fact." See id. 
"Expert testimony assists the trier-of-fact when the expert's knowledge
and experience on a relevant issue are beyond that of the average juror
and the testimony helps the trier-of-fact understand the evidence or
determine a fact issue." K-Mart Corp. v. Honeycutt, 24 S.W.3d 357,
360 (Tex. 2000). We hold the trial court was within its discretion to
allow the testimony regarding Munchausen syndrome by proxy.

 Dr. Reece testified about the characteristics of Munchausen
syndrome by proxy and gave his opinion that Michael Harwood's death
was caused by his mother intentionally suffocating him in a case of
Munchausen syndrome by proxy. The trial court allowed the testimony. 
Dr. Reece testified that he is a pediatrician employed by the
Massachusetts Society for the Prevention of Cruelty to Children and that
he routinely gives lectures and seminars about child abuse and neglect. 
He also testified that he has been called on to consult regarding
suspected child abuse cases in the emergency room. The trial court
was well within its discretion to allow his testimony. Additionally, we
find no merit to Alvarez's contention that Dr. Reece's testimony should
have been excluded because it was not adequately disclosed during
discovery.

 Likewise, the trial court did not abuse its discretion in allowing the
testimony of Dr. Norton. Dr. Norton testified that she is a forensic
pathologist who has been exposed to many autopsies of children, and
that many of the autopsies were of children who died from child abuse. 
She stated she was very familiar with Munchausen syndrome by proxy,
and gave a detailed description of the syndrome. We overrule Alvarez's
second, third and fourth points of error.

 By their fifth point of error, Alvarez argues that the trial court erred
in allowing the jury to hear evidence regarding whether Roxanne took
out life insurance on her son prior to his death. Counsel for defendants
asked Roxanne, on the stand, whether she had ever taken out a life
insurance policy on Michael. Her response was equivocal. Defense
counsel gave her an authorization form and asked her to sign it so he
could fax it to the insurance company and obtain a copy of any
applications for insurance she made for life insurance on Michael. After
strenuous debate over the issue, both attorneys read a stipulation to the
jury. It said:

 We attorneys for both the Plaintiffs and all of the Defendants
stipulate and/or agree to the fact that if the evidence was
pursued it would show that the application for insurance
that Mr. Brin inquired of Roxanne Alvarez on the afternoon
of 12/5/92 pertained to American National Insurance policy
in the amount of $3,000 and was never issued because of
Michael Harwood's preexisting condition.


 First, Alvarez contends that the trial court erred in allowing the
defense to taint the jury by introducing testimony regarding insurance. 
Texas Rule of Evidence 411 prohibits evidence regarding whether a
person had liability insurance to be admitted on the issue of whether
the person acted negligently or wrongfully. Tex. R. Evid. 411. However,
the "rule does not require the exclusion of evidence of insurance against
liability when offered for another issue, such as proof of agency,
ownership, or control, if disputed, or bias or prejudice of a witness." Id.

 While we do not condone defense counsel's tactics of surprising
Alvarez on the stand with a request that she sign an authorization for
release of life insurance records, we do not believe that the interjection
of insurance caused reversible error in this case. See Tex. R. App. P.
44.1. No judgment may be reversed on appeal on the ground that the
trial court made an error of law unless this Court concludes that the
error complained of either (1) probably caused the rendition of an
improper judgment; or (2) probably prevented the appellant from
properly presenting the case to the court of appeals. Id. We believe
that any harm that could have resulted from the interjection of
insurance and the borderline conduct of defense counsel with regard to
the authorization form was not serious enough to "probably cause the
rendition of an improper judgment." Id. Accordingly, we overrule
Alvarez's fifth point of error.

 By her sixth issue, Alvarez contends that the jury should not have
been asked to find intentional conduct in determining liability issues. 
The first question submitted to the jury asked whether the negligence
or intentional conduct of a list of persons caused the death of Michael
Harwood. The list included Roxanne Alvarez. Alvarez contends that
the evidence did not support submission of the issue of intentional
conduct. We disagree.

 The trial court has broad discretion in submitting the jury charge. 
Error in the charge is reviewed under an abuse of discretion standard,
and this Court will not reverse a case due to charge error unless the
error probably caused the rendition of an improper judgment. See Tex.
R. App. P. 44.1(a); Kajima Intern., Inc. v. Formosa Plastics Corp., USA,
15 S.W.3d 289, 291­92 (Tex. App.--Corpus Christi 2000, no pet.). The
trial court must submit the questions, instructions and definitions that
are raised by the written pleadings and the evidence. Tex. R. Civ. P.
278; Gunn Infiniti, Inc. v. O'Byrne, 996 S.W.2d 854, 862 (Tex. 1999). 
In fact,

 A trial court may refuse to submit a question only if no
evidence exists to warrant its submission. If there is some
evidence to support a jury question and the trial court does
not submit the question, the trial court has committed
reversible error. In determining whether a trial court should
have submitted a question to the jury, the reviewing court
must examine the record for evidence supporting
submission of the question and ignore all evidence to the
contrary. Conflicting evidence presents a fact question for
the jury.


Id. (internal citations omitted).

 We hold that the evidence was sufficient to substantiate the
court's inclusion of the question. The defense produced numerous
witnesses who opined that the circumstances surrounding Michael's
death indicated that Alvarez intentionally suffocated him.

 Next, Alvarez argues that the court should not have included the
question on Roxanne's intention in the first question, which asked
whether the "intentional or negligent conduct" of a list a people caused
the death of Michael Harwood. However, Alvarez expressly waived that
objection at trial. Alvarez's trial counsel specifically requested that the
trial court submit the question in the form in which it was submitted. 
We overrule Alvarez's sixth point of error.

 Finally, Alvarez argues that the trial court improperly severed
certain defendants and causes of action from the instant proceeding
before the trial. The trial court granted summary judgment that Alvarez
take-nothing on all her intentional tort causes of action, and on her
negligence actions against Dr. McNeil, Dr. Dirksen, and Dr. Cortes. The
court then ordered the severance of those claims. We find that the
severance was within the trial court's discretion.

 "Severance of claims under the Texas Rules of Civil Procedure
rests within the sound discretion of the trial court." Liberty Nat. Fire
Ins. Co. v. Akin, 927 S.W.2d 627, 629 (Tex. 1996); see Guaranty Federal
Savings Bank v. Horseshoe Operating Co., 793 S.W.2d 652, 658 (Tex.
1990). Rule 41 states that "[a]ny claim against a party may be severed
and proceeded with separately." Tex. R. Civ. P. 41. Accordingly, a trial
court's decision regarding severance will not be disturbed absent an
abuse of discretion. Guaranty Federal Savings Bank, 793 S.W.2d at
658. A trial court properly exercises its discretion in severing claims
when: (1) the controversy involves more than one cause of action; (2)
the severed claim is one that could be asserted independently in a
separate lawsuit; and (3) the severed actions are not so interwoven
with the other claims that they involve the same facts and issues. Id. 
Under that criteria, the trial court's severance was proper. We overrule
Alvarez's seventh and final point of error complaining of suspected
errors in the jury trial. We affirm the trial court's judgment in cause
number 13-98-152-CV.

Part Two: Challenge to the Summary Judgment 


On the Remanded Causes of Action



 Alvarez also appeals the trial court's grant of summary judgment
on the remanded claims. This Court affirmed the trial court's original
grant of summary judgment that Alvarez take nothing on her negligence
claims against Dr. Dirksen and Dr. McNeil. Alvarez, 967 S.W.2d at 883. 
However, the Court remanded Alvarez's claims of malicious
prosecution, civil conspiracy, intentional infliction of emotional distress
and negligence against Dr. Cortes, and also remanded her causes of
action for conspiracy and intentional infliction of emotional distress
against Dr. McNeil and Dr. Dirksen. Id. On remand, the trial court
granted summary judgment on those remaining claims.

A. Negligence Claims Against Dr. Cortes


 This Court reversed the summary judgment with regard to Dr.
Cortes on the negligence and gross negligence claims. Cortes moved
for summary judgment on grounds that he is entitled to judgment as a
matter of law on the basis of the doctrines of collateral estoppel and res
judicata.

 We review a summary judgment de novo. Whalen v.
Condominium Consulting and Management Services, Inc., 13 S.W.3d
444, 446 (Tex. App.--Corpus Christi 2000, pet. denied). To warrant
summary judgment, the movant must show that there is no genuine
issue as to any material fact and that the movant is entitled to judgment
as a matter of law on the issues expressly set out in the motion. Tex.
R. Civ. P. 166a(c). We review the evidence in the light most favorable
to the non-movant and disregard all contrary evidence and inferences. 
Ramirez v. Carreras, 10 S.W.3d 757, 760 (Tex. App.--Corpus Christi
2000, pet. denied). When a defendant moves for summary judgment
on an affirmative defense, she must conclusively establish all elements
of her affirmative defense. Centeq Realty, Inc. v. Siegler, 899 S.W.2d
195, 197 (Tex. 1995).

 1. Negligence in Dr. Cortes' Capacity as Director of Emergency
Services

 Dr. Cortes has shown entitlement to judgment on any claims of
negligence he is alleged to have committed in his capacity as director
of emergency services at Driscoll. If Driscoll has been found to be non-negligent in its care of Michael, that finding would apply to all actions
taken by its agents in their capacity as agents of the Hospital. The jury
was correctly charged that hospitals act by and through their officers,
employees, managers, and agents, and that those acts are the acts of
the hospital. A hospital may be vicariously liable for the negligence of
its employees or agents under theories of respondeat superior and
ostensible agency if the employee or agent is negligent and proximately
causes the injury. Baptist Mem'l Hosp. Sys. v. Sampson, 969 S.W.2d
945, 947-48 (Tex. 1998).

 All the negligent acts that Dr. Cortes was accused of committing
in his capacity as Director of Emergency Services involved hospital
policy and procedures and were included in Alvarez's suit directly
against the Hospital. The jury found that the Hospital in no way caused
the death of Michael Harwood. Thus, Alvarez's claims that Dr. Cortes
caused Michael Harwood's death, in his capacity as Director of
Emergency Services, have already been litigated and are barred from
being re-litigated.

 2. Negligence in Dr. Cortes' Capacity as an Individual Physician

 Dr. Cortes also argued that the summary judgment evidence
established that no physician-patient relationship existed between
himself and Michael Harwood that could impose negligence liability for
the actions made the basis of this lawsuit. Dr. Cortes' affidavit states
that while he did treat Michael in the past, he had no involvement in
Michael's treatment with regard to his admission to Driscoll on April
10th, preceding the April 12th episode. Dr. Cortes stated that he did
not even see Michael from January 27th until April 12th, when Michael
was already in a coma. The law in Texas is clear that a physician
cannot be held liable for medical negligence to a non-patient. St. John
v. Pope, 901 S.W.2d 420, 424 (Tex. 1995); Bird v. W.C.W., 868 S.W.2d
767, 769 (Tex. 1994); Ramirez v. Carreras, 10 S.W.3d at 761. The
existence of a professional relationship adequate to trigger a duty to use
a professional standard of care is a preliminary question of law. St.
John v. Pope, 901 S.W.2d at 424; Ramirez, 10 S.W.3d at 761.

 We hold that because there was no physician-patient relationship,
summary judgment was properly granted with regard to the negligence
claims against Dr. Cortes relating to any negligence in his capacity as
an individual physician (and not as Director of Emergency Services for
the hospital). Alvarez did not challenge Cortes' affidavit stating that he
did not treat Michael in the days preceding his cardio-pulmonary failure
and coma. We hold that a physician-patient relationship was not
created that would allow Dr. Cortes to be held negligent for the
treatment Michael received in his April hospital stay that led up to his
coma.

 3. Negligence for Dr. Cortes' Treatment of Michael before this
Episode Began

 The only other potential basis for finding Dr. Cortes negligent is for
actions he took while treating Michael prior to Michael's April
admission. Even considering Dr. Wendt's affidavit as competent
summary judgment evidence, the plaintiff has presented no evidence
that Dr. Cortes' treatment of Michael Harwood prior to his admission in
April of 1993 fell below the standard of care. Accordingly, we sustain
the trial court's grant of summary judgment that Alvarez take nothing
on her claims of negligence and gross negligence against Dr. Cortes.(3)

B. Intentional Tort Claims


 1. Civil Conspiracy Claims

 Next, the trial court granted summary judgment that Alvarez take
nothing on her tort claims against Dr. Cortes, Dr. McNeil and Dr.
Dirksen. Alvarez alleged that they conspired with one another to have
her charged with Michael's injuries and to conceal their own negligent
acts. The defendants argue that because the jury found that Dr.
McNeil, Dr. Dirksen and the hospital did not negligently cause Michael's
death, Alvarez is barred by collateral estoppel from claiming that they
conspired to cover up their negligence. We hold that the doctors have
conclusively established that the doctrine of collateral estoppel bars
Alvarez from further prosecuting her civil conspiracy causes of action
against them.

 A civil conspiracy is a combination of two or more persons formed
to accomplish an unlawful purpose or to accomplish a lawful purpose
by unlawful means. Massey v. Armco Steel Co., 652 S.W.2d 932, 934
(Tex. 1983). The essential elements are (1) two or more persons; (2) an
object to be accomplished; (3) a meeting of minds on the object or
course of action; (4) one or more unlawful, overt acts; and (5) damages
as the proximate result. Id. We agree that the jury's findings that Dr.
McNeil and Dr. Dirksen were not guilty of negligence that proximately
caused Michael Harwood's death precludes her from re-litigating the
issue of whether they conspired to conceal their own negligence. 
Additionally, because Dr. Dirksen and Dr. McNeil were not found to be
negligent, only one person is left who could have been found negligent
by the jury--Dr. Cortes. Because a conspiracy requires more than one
person, Alvarez's claim against Dr. Cortes would likewise have to fall. 
We affirm the trial court's grant of summary judgment on the
conspiracy causes of action.

 2. Intentional Infliction of Emotional Distress Claims

 We also hold the trial court correctly granted summary judgment
that Alvarez take nothing on her claims of intentional infliction of
emotional distress claims. Defendants argued that Alvarez had no
evidence on an essential element of her cause of action. We agree.

 The elements of a cause of action for intentional infliction of
emotional distress are: (1) the defendant acted intentionally or
recklessly; (2) the conduct was extreme and outrageous; (3) the
defendant's conduct caused the plaintiff emotional distress; and (4) the
emotional distress was severe. Twyman v. Twyman, 855 S.W.2d 619,
621 (Tex. 1993). Alvarez contends that the doctors' behavior in
colluding to report her and, in fact, reporting her to CPS in an effort to
avert attention from their own negligence in causing the death of
Michael amounted to intentional infliction of emotional distress. We
agree that there is no evidence to show that the doctors' actions were
extreme and outrageous because there is no evidence to show they did
not believe the claims they were making against Alvarez. We affirm the
trial court's decision that Alvarez take nothing on her intentional
infliction of emotional distress claims.

 3. Malicious Prosecution Claims

 Finally, we hold that the trial court correctly granted summary
judgment that Alvarez take nothing on her claims of malicious
prosecution. A cause of action for malicious prosecution requires the
plaintiff to show: (1) the commencement of a criminal prosecution
against the plaintiff; (2) causation of the action by the defendant; (3)
termination of the prosecution in the plaintiff's favor; (4) the plaintiff's
innocence; (5) the absence of probable cause for the proceedings; (6)
malice in fling the charge; and (7) damage to the plaintiff. Richey v.
Brookshire Grocery Co., 952 S.W.2d 515, 517 (Tex. 1997). The
defendants moved for summary judgment on no-evidence grounds. We
hold that Alvarez failed to produce any evidence to raise a fact issue
regarding either the absence of probable cause for the proceedings or
malice in the filing of the charge. Accordingly, we affirm the trial court's
ruling that Alvarez take nothing on her malicious prosecution claims.

 We hold the summary judgment in cause number 13-99-088-CV
was properly granted, and affirm that judgment.

 ______________________________

 J. BONNER DORSEY,

 Justice


Do not publish
.

Tex. R. App. P. 47.3(b).


Opinion delivered and filed

this 7th day of December, 2000.


1. While the causes were separated into two cause numbers after the
summary judgment was granted, for the sake of clarity, in describing facts
common to both, we treat them as if they were one cause.
2. Collectively referred to as "Alvarez" except where otherwise indicated.
3. Cortes also moved for summary judgment on the negligence and gross
negligence claims on no-evidence grounds. We do not reach these potential
bases for the summary judgment for Dr. Cortes because we have held the
judgment was properly granted him on other grounds.