Nancy **RODRIGUEZ**, individually and on Behalf of The Estate of Paul Broussard, Appellant,

v.

Mary Anne **SPENCER** and Thomas Earl **Randle**, Appellees.

No. 01–94–00938–CV.

Court of Appeals of Texas, Houston (1st Dist.).

May 25, 1995.

Rehearing Overruled June 22, 1995.

Larry S. Lee, Houston, Clinard J. Hanby, The Woodlands, for appellant.

Britton B. Harris, Gary M. Jewell, John P. Venzke, Houston, for appellees.

Before COHEN, MIRABAL and TAFT, JJ.

## OPINION

TAFT, Justice.

This case involves the extent of parental liability when minors commit intentional torts resulting in personal injuries. Appellant, Nancy Rodriguez, individually and on behalf of the estate of her adult son, Paul Broussard, appeals from a take-nothing summary judgment granted in favor of appellee, Mary Anne Spencer, who is the parent of a 17–year–old minor child implicated in Broussard's death. In one point of error,[1] Rodriguez argues that the trial court erred in granting summary judgment. We affirm.

### Summary of Facts

In the early morning hours of July 4, 1991, Paul Broussard was beaten and stabbed to

---

1. In a second point of error, Rodriguez complains about the grant of summary judgment to appellee, Thomas Earl Randle. As Randle has been dismissed from this appeal, the second point of error is moot and will not be discussed.

death by four adults and five minors in a "gay-bashing" incident. The minors included Spencer's son, Brian Douglas Spake.

Broussard's mother, Rodriguez, sued the participants, Spencer and the other parents of the minor children, and a nightclub where the group allegedly became intoxicated immediately prior to the assault. Rodriguez' causes of action included assault and battery, wrongful death, survival, negligence, and violation of the Dram Shop Act.[2]

The negligence claims against the parents specifically addressed: (1) failure to adequately supervise; (2) failure to provide reasonable discipline; (3) failure to impose a reasonable curfew; and (4) negligently permitting a child to engage in conduct likely to cause injury to third parties. The claim against Spencer added negligent entrustment of a motor vehicle and failure to exercise the duties of a managing conservator. Summary judgment was granted in favor of Spencer, who was severed from the case.

### Standard of Review

■ A defendant is entitled to judgment when the summary judgment proof establishes, as a matter of law, that there is no genuine issue of fact about one or more essential elements of the plaintiff's cause of action. *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex.1970); Tex.R.Civ.P. 166a(c). In a negligence case, the plaintiff must establish: (1) a legal duty owed by one person to another; (2) breach of that duty; and (3) damages proximately caused by the breach. *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex.1990); *Dixon v. Houston Raceway Park, Inc.,* 874 S.W.2d 760, 762 (Tex.App.—Houston [1st Dist.] 1994, no writ). Once the defendant negates an essential element of the plaintiff's claim, the plaintiff must present evidence raising a fact issue precluding summary judgment. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979); *Goldberg v. United States Shoe Corp.,* 775 S.W.2d 751, 752 (Tex.App.—Houston [1st Dist] 1989, writ denied).

**2.** Tex.Alco.Bev.Code Ann. § 2.03 (Vernon 1995).

■ In deciding whether there is a disputed fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex. 1985). Every reasonable inference is indulged in favor of the nonmovant and any doubts resolved in the nonmovant's favor. *Montgomery v. Kennedy,* 669 S.W.2d 309, 310–11 (Tex.1984).

■ When a trial court's order does not specify the grounds relied on for its ruling, the summary judgment may be affirmed on any meritorious theory advanced in the motion. *Insurance Co. of N. Am. v. Security Ins. Co.,* 790 S.W.2d 407, 410 (Tex.App.— Houston [1st Dist.] 1990, no writ). Here, the summary judgment is not specific, but the only ground urged in Spencer's motion for summary judgment is the lack of duty, an essential element of Rodriguez' negligence claim.

### Scope of Parental Duty

Rodriguez maintains that summary judgment in favor of Spencer is improper because a parent's duty to supervise, control, and discipline children arises from the parent-child relationship, regardless of foreseeability. Spencer argues that she owes Rodriguez no duty because the actions of her child were unforeseeable.

#### 1. Statutory Authority

#### a. Section 12.04 of the Family Code

■ Rodriguez contends that a parent's duty to third parties is created by Tex.Fam. Code Ann. § 12.04(2) (Vernon Supp.1995). Section 12.04, states, in pertinent part, that a parent has "the duty of care, *control,* protection, and *reasonable discipline* of the child." (Emphasis added.) Rodriguez contends this provision is especially applicable to Spencer, whose divorce decree specifically delegates this duty to her as managing conservator.

Unlike other provisions of the Family Code, section 12.04 is limited to the parent-child relationship, not the parent-third party relationship. *See, e.g.,* Tex.Fam.Code Ann.

§ 33.01 (Vernon 1986)[3] (protecting property owners from malicious or negligent children); *id.* § 51.01 (protecting the public from delinquent children). In addition, the cases applying section 12.04 have done so only when a parent faces criminal liability for acts or omissions toward his or her own child. *See, e.g., Ahearn v. State,* 588 S.W.2d 327 (Tex. Crim.App.1979); *Harrington v. State,* 547 S.W.2d 616 (Tex.Crim.App.1977). We find that section 12.04 does not establish a parent's duty to control or discipline children for the benefit of third parties.

### b. Municipal Ordinances

As an additional source of parental third-party duty, Rodriguez refers to the widespread use of municipal curfews that impose criminal penalties upon parents when they do not control their children. We do not find the existence of these ordinances dispositive, especially in this case, where Rodriguez did not allege that an ordinance had been violated. The mere existence of these ordinances elsewhere did not create a duty on the defendant to follow them. *See Blount v. Bordens Inc.,* 892 S.W.2d 932, 953 (Tex.App.—Houston [1st Dist.] 1994, writ requested) and case cited therein (*Continental Oil Co. v. Simpson,* 604 S.W.2d 530 (Tex.Civ. App.—Amarillo 1980, writ ref'd n.r.e.).

### c. Summary

We do not find a source of third-party parental duty in the Family Code, municipal ordinances, or any other statute. We therefore turn to the issue of duty in the common-law context.

## 2. Common Law Authority

### a. Test to Establish Duty

The threshold inquiry in a negligence action is whether the defendant owed a duty to the plaintiff. *El Chico Corp. v. Poole,* 732 S.W.2d 306, 311 (Tex.1987). If there is no legal duty, the defendant cannot

be liable for negligence. *Barnes v. Wendy's Int'l, Inc.,* 857 S.W.2d 728, 729 (Tex.App.— Houston [14th Dist.] 1993, no writ). The existence of a duty is a question of law the court must decide based on the specific facts of the case. *Mitchell v. M–K–T R.R.,* 786 S.W.2d 659, 662 (Tex.) *cert. denied,* 498 U.S. 896, 111 S.Ct. 247, 112 L.Ed.2d 205 (1990); *Lawson v. B Four Corp.,* 888 S.W.2d 31, 33 (Tex.App.—Houston [1st Dist.] 1994, writ denied); *Shell Oil Co. v. Humphrey,* 880 S.W.2d 170, 175 (Tex.App.—Houston [14th Dist.] 1994, writ denied).

To determine whether a duty exists, courts apply a risk-utility balancing test. *Way v. Boy Scouts of Am.,* 856 S.W.2d 230, 234 (Tex.App.—Dallas 1993, writ denied). The court must consider several factors, including risk, foreseeability, and likelihood of injury weighed against the social utility of the defendant's conduct, the magnitude of the burden of guarding against the injury and consequences of placing that burden on the defendant. *Phillips,* 801 S.W.2d at 525; *Mitchell,* 786 S.W.2d at 662. Foreseeability is the most significant of these factors. *Phillips,* 801 S.W.2d at 525; *Mitchell,* 786 S.W.2d at 662.

The test for foreseeability is what one should, under the circumstances, reasonably anticipate as the consequences of one's conduct. *Way,* 856 S.W.2d at 234; *McCullough v. Amstar Corp.,* 833 S.W.2d 312, 315 (Tex. App.—Amarillo 1992, no writ) (quoting *City of Dallas v. Maxwell,* 248 S.W. 667, 670 (Tex.Comm'n App.1923, holding approved)). Foreseeability does not require that a person anticipate the precise manner of injury. *Travis v. City of Mesquite,* 830 S.W.2d 94, 98 (Tex.1992).

### b. Foreseeability as an Element of Parental Duty

In determining the existence of duty by questioning foreseeability, the courts have concluded that there is no duty to prevent

---

**3.** The parties agree that Tex.Fam.Code Ann. § 33.01 (Vernon 1986) is not applicable to this case. The statute imposes upon parents liability for *property damage* caused by: (1) a child's wilful and malicious conduct; or (2) a child's negligent conduct if the parent negligently super-

vised the child. *Aetna Ins. Co. v. Richardelle,* 528 S.W.2d 280, 285 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.); *Buie v. Longspaugh,* 598 S.W.2d 673, 676 (Tex.Civ.App.—Fort Worth 1980, writ ref'd n.r.e.); Tex.Fam.Code Ann. § 33.01 (Vernon 1986).

the criminal actions of a third person who does not act under the defendant's supervision or control unless the criminal conduct is a foreseeable result of the defendant's negligence. *Lawson*, 888 S.W.2d at 35; *La Fleur v. Astrodome–Astrohall Stadium*, 751 S.W.2d 563, 564 (Tex.App.—Houston [1st Dist.] 1988, no writ). Moreover, there is no duty to control the conduct of third persons absent a special relationship between the actor and the third person, such as employer-employee, independent contractor-contractee, and parent-child. *Phillips*, 801 S.W.2d at 525; *De-Luna v. Guynes Printing Co.*, 884 S.W.2d 206, 208 (Tex.App.—El Paso 1994, writ denied). However, the existence of a special relationship is not controlling. *See, e.g., De-Luna*, 884 S.W.2d at 209–10 (finding no employer-employee duty absent an affirmative act of control).

The mere fact of paternity or maternity does not make a parent liable to third parties for the torts of his or her minor child.[4] *Richardelle*, 528 S.W.2d at 285; *Moody v. Clark*, 266 S.W.2d 907, 912 (Tex. Civ.App.—Texarkana 1954, writ ref'd n.r.e.). As a general rule, minors are civilly liable for their own torts. *Williams v. Lavender*, 797 S.W.2d 410, 412 (Tex.App.—Fort Worth 1990, writ denied); *Brown v. Dellinger*, 355 S.W.2d 742, 746 (Tex.Civ.App.—Texarkana 1962, writ ref'd n.r.e.).

A parent may be vicariously liable for the minor's torts under respondeat superior or joint enterprise. *See de Anda v. Blake*, 562 S.W.2d 497, 499 (Tex.Civ.App.—San Antonio 1978, no writ); *Richardelle*, 528 S.W.2d at 285. A parent may also be directly liable to a third party when the parent negligently permits the child to act in a manner likely to cause injury to another. *Richardelle*, 528 S.W.2d at 285. For example, negligence may be shown where the parent entrusts a child with a dangerous instrumentality or carelessly fails to restrain a child known to have

dangerous tendencies. *Moody*, 266 S.W.2d at 912.

Rodriguez contends that *Moody*, 266 S.W.2d at 912, establishes a general duty to supervise because its facts involve neither entrustment of a dangerous instrumentality nor a child with a violent history. In *Moody*, a mother left her son and another young boy in the back seat of a car with a running engine. 266 S.W.2d at 909. The boys climbed into the front seat and managed to put the car in motion; the car jumped the curb and caused property damage and personal injuries. *Id.* The court explained that parental liability need not be predicated upon "entrustment" if a parent makes accessible a dangerous instrumentality or what might be a dangerous instrumentality in the hands of a child. *Id.* at 912.

Deciding whether instrumentalities are inherently or potentially dangerous involves an element of anticipation, what a parent knows or should know. The same is true for the known violent tendencies of children discussed in *Moody*. Although *Moody* does not use the word "foreseeability," we conclude that parental anticipation of danger was an element necessary to establish liability. *See id.* at 912. As we said in *Ritter v. Thibodeaux*, the basis of the parent's duty to third persons is the parent's knowledge, consent, sanction, or participation in the child's activities. 41 S.W. 492, 493 (Tex.Civ.App. 1897, no writ). Actual knowledge is not required *if the parent should, under the circumstances, reasonably anticipate* the consequences of his or her actions. *See Way*, 856 S.W.2d at 234.[5]

Rodriguez argues that a parent's third-party duty to supervise is unrestricted and cites *Yarborough v. Berner*, 467 S.W.2d 188 (Tex.1971), and *Houston City Ry. Co. v. Dillon*, 22 S.W. 1066 (Tex.Civ.App. 1893, no writ). Both cases involve parental liability

---

4. The parent is protected from liability to the minor by the doctrine of parental immunity. *Shoemake v. Fogel, Ltd.*, 826 S.W.2d 933, 935 (Tex.1992).

5. Rodriguez maintains that negating foreseeability cannot negate duty. We disagree where, as here, the focus is on a parent's duty to potential

third-party victims of torts committed by a parent's child. If the reason to anticipate an injury is not established, then no duty arises to prevent the injury. *Alm v. Aluminum Co. of Am.*, 717 S.W.2d 588, 590 (Tex.1986); *Houston Lighting & Power Co. v. Brooks*, 161 Tex. 32, 336 S.W.2d 603, 606 (1960).

when the parents fail to supervise the child, who is subsequently injured by a third party's negligence. *Yarborough,* 467 S.W.2d at 189; *Dillon,* 22 S.W. at 1067. In neither case was the parent contributorily negligent. *Yarborough,* 467 S.W.2d at 190; *Dillon,* 22 S.W. at 1067. Also, neither case discusses the parent's duty to anyone other than his or her own injured child. For these reasons, we do not agree that *Yarborough* or *Dillon* creates an unrestricted parental duty to third parties.

### c. Restatement Position

■ Spencer argues that we should adopt the parental duty of care as stated in the Restatement (Second) of Torts because it incorporates the foreseeability element:

> A parent is under a duty to exercise reasonable care so to control his minor child as to prevent it from intentionally harming others or from so conducting itself as to create an unreasonable risk of bodily harm to them, if the parent
>
> (a) knows or has reason to know that he has the ability to control his child, and
>
> (b) knows or should know of the necessity and opportunity for exercising such control.

RESTATEMENT (SECOND) OF TORTS § 316 (1965). Rodriguez argues that "foreseeability" is not mentioned in the treatise's statement of parental duty. Nevertheless, Rodriguez relies on the Restatement for the proposition that it places a duty on parents to supervise their children when they *should know* of the necessity for doing so.

As admitted by the parties, no Texas court has expressly adopted this provision. *See, e.g., Phillips,* 801 S.W.2d at 525 (referring to this section as an illustration of the parent-child duty); *Hall v. Martin,* 851 S.W.2d 905, 911 (Tex.App.—Beaumont 1993, writ denied) (rejecting this section as not applicable to the parent-child relationship). Although we find section 316's analysis helpful, we decline to adopt it. *See DeLuna,* 884 S.W.2d at 210 (rejecting a similar provision applicable to the employer-employee relationship).

### d. Summary

■ We conclude that a parent's duty to protect third parties from the acts of the parent's minor children depends on whether the injury to the third party is reasonably foreseeable under the circumstances as evidenced by the parent's knowledge, consent, sanction, or participation in the child's activities. In determining the existence of this third-party parental duty, we may also consider the risk to others and the likelihood of injury weighed against the social utility of the parent's conduct, the magnitude of the burden of guarding against the injury, and consequences of placing that burden on the parent.

### Application of Duty to Spencer

■ As discussed above, once the defendant negates an essential element of the plaintiff's claim, the plaintiff must present evidence raising issues precluding summary judgment. *City of Houston,* 589 S.W.2d at 678. In determining whether the defendant negated an element of the plaintiff's claim, we may rely solely on the testimonial evidence of an interested witness if that evidence is uncontroverted, clear, positive, credible, free from contradictions and inconsistencies, and could have been readily controverted. *Villanueva v. Astroworld,* 866 S.W.2d 690, 696 (Tex.App.—Houston [1st Dist.] 1993, writ denied); TEX.R.CIV.P. 166a(c).

### 1. Spencer's Evidence

■ Spencer's motion for summary judgment was supported by her deposition testimony. It covered: (1) general characteristics of her son, Brian; (2) the nature of her supervision of him; (3) Spencer's knowledge of Brian's associations; (4) her knowledge of Brian's activities on the night in question; and (5) specific characteristics of Brian relevant to the acts committed against Paul Broussard. Other deposition testimony indicated that Spencer's son did not use his car in the attack on Broussard.

### a. General Characteristics

Brian received average grades in school. He had no discipline problems at school.

Brian was not allowed to drink and Spencer had never seen her son drink alcohol. There were no weapons in the home and Spencer had never seen Brian with a weapon of any sort. Brian was honest, forthright, reliable, and dependable.

### b. Supervision

Spencer established and maintained curfews which Brian did not violate. She never knew Brian to lie about his whereabouts or what he was doing. When Brian committed the only crime of which she ever knew, shoplifting an audio cassette tape, she grounded him for two weeks.

### c. Associations

Spencer occasionally investigated her son's acquaintances. Based on negative reports, she warned Brian to stay away from one acquaintance named Jon Buice. Brian told her not to worry because he did not run around with Buice. Of the 10 youths involved in the incident in question, Spencer only knew of two with whom her son had previously associated in any manner.

### d. Activities That Night

On the date in question, Brian had asked to spend the night with Adam White. Spencer knew and trusted Adam and his family. Brian had spent the night there on previous occasions, on some of which Spencer had called to verify Brian's whereabouts. However, she did not consider it necessary. Spencer had never known Brian to lie about where he was going or what he was doing.

### e. Characteristics Specific to the Offense

In addition, Spencer specifically denied knowledge of any violent tendencies in her son, in particular towards homosexuals:

Q. Okay. So, as far as you know—you knew, Brian was not having any specific difficulty in any area of his life other than the usual stumbles of adolescence, so to speak?

A. That's right.

. . . .

Q. Okay. Prior to July 3rd of 1991, did you have any reason to believe that Brian was associating with a group of people who were, say, cruising in the Houston area looking to assault homosexual males? Do you have any reason to believe that was going on?

A. No.

. . . .

Q. Okay. Prior to July 1991, had you ever noticed any violent tendencies on the part of your son or any reason to believe [he possessed] a violent temperament?

A. Never.

Q. Okay. Had he ever been in—I guess everyone to some degree gets in a little fight at school sometimes; but was violence or altercations something that was a regular routine of [your son] or very rare, if ever?

A. Never.

## 2. Rodriguez' Rebuttal

Rodriguez rebuts Spencer's evidence in two ways: (1) she attacks the lack of clarity and the equivocation of Spencer's testimony; and (2) she relies on Jon Buice's testimony to contradict Spencer's testimony.

### a. Vagueness and Equivocation

Rodriguez contends that none of Spencer's testimony is clear and positive. She challenges the entirety as vague statements of opinion. For example, when Spencer was first asked about a curfew, she stated that she did not recall one. After further questioning, she stated that weekday curfews began at 10:30. Spencer was also asked about the summer of 1991, at which time her son was in summer school:

Q. When he was taking summer school that summer, if it was a weeknight, would that trigger the 10:30 curfew; or did you allow him to stay out a little bit later?

A. No, he—*I don't think* he was allowed to stay out later.

(Emphasis added.) Rodriguez attacks similar statements where Spencer said she "didn't feel" that an answer was correct or that she "couldn't recall" an answer.

### b. Contradiction

As evidence to raise a fact issue, Rodriguez relies on the deposition testimony of Jon Buice, one of the principal instigators of the attack on Rodriguez's son. On appeal, Rodriguez also refers to additional excerpts from Buice's deposition and the deposition of Spencer's son, which were presented to the trial court in a motion for new trial but *not* as part of the summary judgment evidence. We may consider the record only as it existed prior to the grant of summary judgment. *City of Houston*, 589 S.W.2d at 675; *White v. Wah*, 789 S.W.2d 312, 320 (Tex.App.—Houston [1st Dist.] 1990, no writ).

Spencer said she had heard "negative things" about Buice and told her son not to associate with Buice. However, as Spencer admitted in her deposition, she did not verify whether her son continued to associate with Buice. As far as she knew, her son no longer saw Buice. In contrast, Buice testified that he was at Spencer's home on several occasions, spent the night there, and was not aware of any restrictions on her son's activities, including curfews.

### 3. Analysis of the Evidence

In *Kennedy v. Baird*, the father of an adult child was sued for negligent entrustment of a rifle by two persons intentionally shot by the son. 682 S.W.2d 377 (Tex.App.— El Paso 1984, no writ). The father's summary judgment proof included his own affidavit, which stated, in part:

> I have no knowledge that at any time [my son] had ever used or fired a weapon at any car or person.... In my opinion, [my son] does not have a violent temper, and I know of no occasion, nor do I have any personal knowledge, where [my son] displayed a violent temper.... During the time that [my son] has lived in my house, neither his mother nor I had any indication that he would attempt to use a weapon or gun against someone else.

*Id.* at 379. The court concluded that the father's affidavit was clear, positive, and direct as to his knowledge to show he breached no duty to the plaintiffs. *Id.*

Like the *Kennedy* court, we find that Spencer's statements are clear, positive, direct, free from any significant contradictions, and demonstrate the extent of her knowledge about her son's activities and temperament. Spencer's testimony includes telling her son not to associate with Jon Buice upon hearing negative things about Buice. Although Buice's testimony contradicts Spencer's testimony as to the extent of contact between her son and Buice, the fact that Buice spent the night at Spencer's house or stayed out past curfew with her son does not mean Spencer knew or should have known her son was violent, hated homosexuals, or would commit criminal acts. The issue is not how much contact Spencer's son actually had with Buice, but what Spencer *knew*, or should have known, about the extent of her son's contact with Buice. Lastly, Rodriguez did not present any evidence controverting testimony that Spencer's son had not used his car during the attack on Broussard.

### 4. Summary

We find that Spencer established that her knowledge, consent, sanction and participation in her son's activities gave rise to no reason for her to know, or even suspect, that her son might become involved in conduct such as the heinous crime committed against Paul Broussard. While the magnitude of the crime committed by her son demonstrates that there was an actual risk of injury to others, Rodriguez presented no fact or circumstance reasonably raising the foreseeability of such behavior by Spencer's son toward others. Placing a burden on Spencer to have guarded against the unforeseeable actions of her son's participation in the injuries inflicted on Paul Broussard would amount to holding her strictly liable for the torts of her son. This we decline to do.

For her part, Rodriguez did not raise a genuine issue of material fact concerning Spencer's third-party parental duty or concerning Spencer's negligent entrustment of a motor vehicle. While Rodriguez did challenge the clarity and consistency of portions of Spencer's testimony, and raise certain contradictions with it, none created a genuine issue of fact material to Spencer's duty to

prevent her son from engaging in behavior so unforeseeable as the atrocity against Paul Broussard. We conclude that the trial court did not err in granting summary judgment in favor of Spencer.

We overrule Rodriguez' point of error and affirm the trial court's judgment.