Affirmed and Memorandum Opinion filed October 5, 2006








Affirmed and Memorandum Opinion filed October 5, 2006.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00518-CV

____________

 

VAN PHAC NGUYEN and PHI THIN
NGUYEN, Individually and as Sole Heirs at Law of BAC DINH NGUYEN, DECEASED, Appellants

 

V.

 

DINH HUNG NGUYEN and HONG VAN
NGUYEN,
Appellees

 



 

On Appeal from the 125th
District Court

Harris County, Texas

Trial Court Cause No. 03-56337

 



 

M E M O R A N D U M    P I N I O N

This appeal arises from a negligence suit brought by Van
Phac Nguyen and Phi Thin Nguyen (the AGrandparents@), against their
son and daughter-in-law, Dinh Hung Nguyen and Hong Van Nguyen (the AParents@).  The
Grandparents claimed the Parents failed to properly control and supervise their
fourteen-year-old son, Huy Dinh Nguyen, who shot and killed his uncle, Bac Dinh
Nguyen.  The Parents filed a hybrid traditional and no-evidence motion for
summary judgment, claiming they neither owed nor breached any duty.  The trial
court granted summary judgment, and the Grandparents appeal.  We affirm.








Factual and Procedural Background

The Nguyen familyCincluding Huy=s grandmother
(Phi), Huy=s parents, Huy, and BacCoccupied a home on
Redding Road.[1] 
Bac, who was Dinh=s younger brother and the Grandparents= adult son, paid
rent to the family and lived in a garage apartment on the property.  Bac was
not close with Huy=s mother, Hong, and he limited his visits
to the house.

In April of 2003, Huy=s father began
serving a prison sentence for credit card fraud.  In May of 2003, Huy received
eighteen months= probation for mischief and unlawful use
of a motor vehicle; he was released into his mother=s custody and
restricted to an 8:00 p.m. curfew.  Huy had already shoplifted on more than one
occasion and was a truant which caused him to fail classes.  He physically
fought with his mother once (a fight his grandmother broke up).  Marynna
Nguyen, Huy=s aunt, said it appeared Huy was becoming violent and
angry at the slightest things.[2] 
Hong admitted Huy was increasingly difficult to control due to disobedience and
disrespectfulness, especially without his father at home.  Hong was typically
away from home to work at her dry cleaning business from 5:00 a.m. until 8:00
or 9:00 p.m..  Further, her store was located across town from the Redding Road
home.

When asked whether
Hong disciplined Huy, Phi replied, AOnly giving him
teachings, but not punishment.@  Phi=s deposition
continued:

Q.      Would you say that [Hong] did all she could
to discipline [Huy]?

A.      Yes.  Let
me tell you this.  His uncle [Bac] . . . told me and his mother that he has
been rotten for a few months already and said that he should be sent away to
that place for a few months so he will be less rotten.

 








 

Phi said Hong called home four or five times a day to check
on Huy, Aand she got me.@  She said Hong
called right after Huy got out of school and asked Phi to feed him, remind him
to do his homework, and go with him if he left the house, but that Ait was so hard
because he would not listen.@

Huy said his
mother would call his cell phone to check up on him and ask what he was doing,
but that he would lie if he did not want her to know where he was.  Huy
admitted he did not follow his curfew.  Phi said Huy Ararely@ came home and
that she, Hong, and an aunt of Huy=s would drive
around looking for him:

[S]ometimes we found him, bring him
home.  Then we were kind of sweet talking to him and tell him that, AYou ought to obey
the law because the law has really put on you because if you don=t do that, then I
must have you put away in jail or so.

On July 13, 2003, Huy phoned his cousin, Khanh Tran, and
told Khanh to instruct Phi to move out of the Redding Road home because she was
causing too many problems between Huy and his mother.  Phi moved out the next
day.

On July 16th, Khanh brought Phi back to retrieve some of
her jewelry; Bac and Huy were at home.  When Phi could not find all of her
jewelry, she believed Huy had stolen it and asked where it was.  Huy began
arguing with Phi.  Bac stepped in and told Huy he would Akick his butt@ if Huy did not
stop.  Huy shouted obscenities at Bac and his grandmother and punched the
wall.  Khanh described Huy as Aenraged.@  Huy said he was
not afraid, he would punch Bac Aright now,@ and AI=m going to cap
your ass,@ meaning he would shoot Bac.  Huy did not have a gun
at that time.  Bac hit Huy and wrestled him to the ground, bruising Huy=s face over his
eye.  During the scuffle, Huy repeatedly said he would Acap@ Bac.








That night, Huy
and Hong called Khanh.  Hong was upset and said she intended to press charges
against Bac for using force against her son (she did, in fact, file a report
with Children=s Protective Services, or ACPS@).  Huy asked
Khanh AHow come you didn=t help me fight
him?  I don=t care if he=s blood or not, I=ll bust a cap on
him.@  Khanh did not
believe Huy would carry out this threat because Huy was young, and Bac was his
uncle.  Hong told Huy not to worry about the fight, and sent him to stay with
his uncle Trinh for a few days until everything Acooled down.@  Hong explained:

. . . everybody have a high temper,
and B and I=m in the middle. 
I don=t know what
happen.  You know, I=m trying to listen on this side; and I try
to listen my son side, you know, try to figure out who wrong. . . .

A couple of days after the fight, Huy returned to the
Redding Road home with two friends.  He stood outside and threatened to kill
Bac, who became concerned and told his brothers and sisters.  A couple of days
later, one of the side mirrors on Bac=s car was broken
out.  A few days after that incident, Bac confided in a nephew and friends that
he was concerned for his safety and, if anything happened to him, the family
should question Huy.  On July 25, 2003, Huy returned to the Redding Road home
with two friends, together they shot and killed Bac.  Huy admitted he was
responsible for Bac=s death because he Apumped@ Bac up into
hitting him, and because he Apumped@ others into
helping him kill Bac.  Huy surrendered to police on August 7th.[3]








The Grandparents sued Huy=s parents for
negligence, claiming the failure to control and supervise Huy proximately
caused Bac=s death.  The Parents filed a hybrid motion for
traditional and no-evidence summary judgment, contending they owed no duty
because Huy=s act was not foreseeable, and they breached no duty
because there was nothing more they could have done to prevent Huy=s act.  The
Grandparents responded that Huy=s historyCincluding car
theft, shoplifting, truancy, breaking curfew, and at least one physical fight
with his motherCshow his act was foreseeable and that
Hong, knowing of these many problems, breached her duty to protect third
parties from Huy because she made no effort to properly supervise her son.  The
trial court granted summary judgment.  The Grandparents appeal, arguing
generally, in a single issue, that more than a scintilla of evidence exists to
support their negligence claim, and that a material question of fact remains.[4]

Standard of Review

We review the granting of a traditional motion for summary
judgment to determine whether no genuine issue of material fact exists so that
judgment should be granted as a matter of law.  KPMG Peat Marwick v.
Harrison County Hous. Fin. Corp., 988 S.W.2d 746, 748 (Tex. 1999).  A
defendant-movant is entitled to summary judgment if one element of the
plaintiff=s theory of recovery is disproved, or if the defendant
pleads and conclusively establishes each essential element of an affirmative
defense, thereby rebutting the plaintiff=s cause of
action.  Am. Tobacco Co., Inc. v. Grinnell, 951 S.W.2d 420, 425 (Tex.
1997).  Our review is de novo, taking as true all evidence favorable to the
nonmovant and indulging every reasonable inference and resolving any doubts in
the nonmovant's favor.  Valence Operating Co. v. Dorsett, 164 S.W.3d
656, 661 (Tex. 2005).

A no‑evidence summary judgment is improperly granted
when the respondent brings forth more than a scintilla of probative evidence
raising a genuine issue of material fact.  Coastal Conduit & Ditching,
Inc. v. Noram Energy Corp., 29 S.W.3d 282, 284 (Tex. App.CHouston [14th
Dist.] 2000, no pet.).  Our review is de novo, taking the evidence in a light
most favorable to the nonmovant and disregarding all contrary evidence and
inferences.  Merrell Dow Pharms., Inc. v. Havner, 953 S.W.2d 706, 711
(Tex. 1997).  When, as here, the trial court=s order does not
specify the grounds upon which it relied, we must affirm if any ground is
meritorious.  FM Props. Operating Co. v. City of Austin, 22 S.W.3d 868,
872 (Tex. 2000).








Parental Duty

To establish negligence, the Grandparents must show the
Parents owed a duty, and that damages suffered were proximately caused by a
breach of that duty.  Doe v. Boys Clubs of Greater Dallas, Inc., 907
S.W.2d 472, 477 (Tex. 1995).  We begin by addressing the Parents= contention they
owed no duty.  As the Parents= attorney agreed at oral argument, there
is no evidence that Huy=s father was negligent.  We limit our
inquiry, therefore, to Hong=s negligence.

When
a Parental Duty is Imposed

The existence of a duty is a question of law for the court
based on the specific facts of the case.  Rodriguez v. Spencer, 902
S.W.2d 37, 41 (Tex. App.CHouston [1st Dist.] 1995, no writ).  AThe mere fact of paternity
or maternity does not make a parent liable to third parties for the torts of
his or her minor child.@  Id. at 42.  While minors are
generally liable for their own torts, a parent may be held directly liable by
permitting the minor to act in a manner likely to cause injury to another.  Id. 
For example, a parent may be liable in negligence for carelessly failing to
restrain a child known to have dangerous tendencies.  Id.  A child is
known to have dangerous tendencies if the parent can anticipate the danger the
child may pose to third parties.  Id.  AActual knowledge
is not required if the parent should, under the circumstances, reasonably
anticipate the consequences of his or her actions.@  Id. (emphasis
in original).

To determine whether a duty exists, courts apply a
risk-utility balancing test involving several factors, including risk,
foreseeability, likelihood of injury weighed against the social utility of the
defendant=s conduct, the magnitude of the burden of guarding
against the injury, and the consequences of placing that burden on the
defendant.  Id. at 41.  A parent=s duty to protect
third parties from their minor child=s acts Adepends on whether
the injury to the third party is reasonably foreseeable under the circumstances
as evidenced by the parent=s knowledge, consent, sanction, or
participation in the child=s activities.@  Id. at
43.








The most important factor in determining whether to impose
a duty is foreseeability.[5] 
Id.  Foreseeability is what a defendant should, under the circumstances,
reasonably anticipate as a consequence of certain conductCit does not mean a
defendant must anticipate the precise manner of injury.  Id.; see
also Isbell v. Ryan, 983 S.W.2d 335, 341 (Tex. App.CHouston [14th
Dist.] 1998, no pet.) (holding that the basis of the parent=s duty to third
persons is the parent=s knowledge, consent, sanction, or
participation in the child=s tendencies to commit bad acts).

Could
Hong Have Reasonably Foreseen Huy=s Crime?

We look first to determine whether Hong=s knowledge,
consent, sanction or participation in Huy=s activities
evidences Bac=s injury was reasonably foreseeable under the
circumstances.  Once we determine whether Hong should have reasonably foreseen
Huy=s act, we look to
the other risk-utility factors to determine whether Hong owed a duty.

There is no evidence Hong ever encouraged, sanctioned,
approved, or participated in Huy=s activities.  We
must, therefore, determine whether her knowledge, under the circumstances,
shows she should have reasonably foreseen Huy=s criminal act.








Hong had no specific knowledge about Huy=s activities
because he consistently lied to her about his actions and whereabouts.  She was
away from home from 5:00 a.m. until 8:00 or 9:00 p.m., and depended on family
members and phone calls to check up on her son.  Hong knew about Huy=s prior criminal
and other bad acts; however, evidence that Huy shoplifted, stole a car, was
truant from school, violated curfew, and Ahung out@ with friends Hong
believed were bad influences amounts to no evidence she should have reasonably
foreseen Huy would kill his uncle.[6]

Hong knew that Huy had threatened Bac=s life during the
June 16th fight.  It is undisputed, however, that Huy had no gun at the time of
the first threat.  In fact, there is no evidence Huy ever possessed or had
access to any gun prior to Bac=s murder, or that he had ever threatened
to shoot or harm anyone before June 16th.[7] 
Hong=s reaction to the
fight, including filing a report with CPS, shows she was more concerned about
Huy=s safety than Bac=s.[8]

Regarding Huy=s subsequent
threats, Bac told his Abrothers and sisters@ about Huy=s second threat,
and Bac told friends and a nephew that he was concerned for his safety.  There
is no evidence that Bac=s sister-in-law Hong knew about any
threats made after June 16th. 








Assuming Hong did know, however, this is insufficient to
show she should have reasonably anticipated Huy would harm Bac.  Even Huy=s cousin, Khanh,
told police he did not believe Huy would follow through with his threats. 
Despite Huy=s anger and disobedience, he did not have a violent
past.  There is no evidence Huy was ever involved in fights at school (on the
contrary, aside from his truancy, there is evidence Huy behaved well in school
and was never suspended), or that he had ever harmed, threatened, or attempted
to harm anyone.  Under these circumstances, when a child has no prior, similar
history of violence, and no prior, similar history of following through with
violent threats, we cannot find that a parent should reasonably foresee that
his or her child would commit murder.  See Sanders v. Herold, No. 01-04-00709-CV,
2006 WL 1766833, *5 (Tex. App.CHouston [1st Dist.] no pet. h.) (noting
foreseeability is often determined by whether the defendant is aware of prior,
similar behavior such as similarity between scoutmaster=s history of Amessing with@ boys and later
act of molestation).[9]

We find the Grandparents have provided no evidence that
Hong could have reasonably anticipated Huy=s participation in
Bac=s murder. 
Foreseeability, the most important factor when determining a defendant=s duty, therefore
weighs against a finding that Hong owed a duty to protect Bac from Huy.

Other
Factors in Determining Duty








Without foreseeability, the bulk of the remaining factors
also weigh against imposing a duty.  In hindsight, it is clear that Huy posed a
significant risk to Bac.  However, at the time, it did not appear likely that
Huy would follow through with his threats.  While Bac may have believed Huy
might attempt to harm him and Khanh did not believe it possible, Huy had no
similar violent history to make his threats appear serious.  Hong=s conductCthat is, working
up to sixteen hours a day and sending her son to live with his uncleCappeared
reasonable and socially useful under the circumstances.  Imposing a burden upon
Hong to Achange her
priorities@ and spend more time with Huy, as the Grandparents= appellate counsel
suggested during oral argument, does not guarantee any difference in Huy=s conduct,
especially when Hong admitted she had difficulty controlling Huy.  These
factors, considered together, weigh against a finding of duty and in favor of
affirmance.

Conclusion

Having evaluated all relevant factors, we find Hong owed no
duty to protect Bac from Huy=s criminal act.  Taking as true all
evidence favorable to the nonmovant and making all reasonable inferences and
resolving any doubts in the nonmovant=s favor, we find
there is no genuine issue of material fact that Hong owed any duty.  Construing
the record in the light most favorable to the nonmovant and disregarding all
contrary evidence and inferences, we find there is no evidence Hong owed any
duty.  We therefore need not address appellants= argument
regarding breach of duty.

We overrule the Grandparents= sole issue on
appeal and affirm the trial court=s judgment.

 

 

 

/s/      J. Harvey Hudson

Justice

 

 

 

Judgment rendered
and Memorandum Opinion filed October 5, 2006.

Panel consists of
Justices Hudson, Fowler, and Seymore.









[1]  It is not clear on this record whether appellant Van
Phac also occupied the Redding Road home.





[2]  Although the Parents posed hearsay objections (a
complaint to the form of the affidavit) to affidavit summary judgment evidence,
they obtained no rulings.  Tex. R. Civ.
P. 166a.  They have, therefore, failed to preserve their objections to
form on appeal.  Dolcefino v. Randolph, 19 S.W.3d 906, 925 (Tex. App.CHouston [14th Dist.] 2000, pet. denied).





[3]  On August 5th, Huy and his mother visited with Huy=s probation officer.  Neither mentioned Bac=s death.  Huy=s
mother falsely reported that Huy=s
father had moved to Saigon to work for a year.  She also reported that she and
Huy had just moved to be closer to her dry cleaning business.  Huy worked at
his mother=s store every day after the shooting until his arrest.





[4]  Although Huy=s
parents also argue a lack of causation in their appellate brief, they made no
such argument in their motion for summary judgment.  We cannot address their
causation argument when the record does not reflect it was ever made to the
trial court.  Tex. R. Civ. P. 166a(c),
(i).





[5]  Foreseeability can, in some cases, trigger a fact
question sufficient to defeat a motion for summary judgment.  See Kendrick
v. Allright Parking, 846 S.W.2d 453, 457 (Tex. App.CSan Antonio 1992, writ denied) (considering whether
the summary judgment evidence conclusively established that appellees did not
know or could not have known from their past experience or from the character
of their business that criminal acts like those involved in this case were
likely to occur, either generally or at some particular time).  However where,
as here, the facts are undisputed, foreseeability remains a question of law
before this Court.  See Walker v. Harris, 924 S.W.2d 375, 377 (Tex.
1996) (holding the existence of a duty is a question of law for the court to
decide from the facts surrounding the occurrence in question); see also
Mitchell v. Misouri-Kansas, Texas R.R. Co., 786 S.W.2d 659, 662 (Tex. 1990)
(quoting Bennett v. Span Indus., Inc., 628 S.W.2d 470, 474 (Tex. App.CTexarkana 1981, writ ref=d n.r.e.)) (AThe existence of duty is a question of law when all of
the essential facts are undisputed, but when the evidence does not conclusively
establish the pertinent facts or the reasonable inferences to be drawn
therefrom, the question becomes one of fact for the jury.@).





[6]  See Doe, 907 S.W.2d at 478 (finding Boys Club
volunteer=s prior convictions for driving while intoxicated
could not lead Club to reasonably anticipate risk he would sexually abuse child
member); Rodriguez, 902 S.W.2d at 44B5
(acknowledging mother knew child shoplifted cassette tape but finding she could
not foresee murder son participated in); see Kennedy v. Baird, 682
S.W.2d 377, 379 (Tex. App.CEl Paso 1984,
no writ) (finding father had no forewarning adult son would shoot at driver
despite appellants= claim son had pushed a fifteen-year-old boy and was
reputed for having a violent temper).  But see Tex. Home Mgmt., Inc. v.
Peavy, 89 S.W.3d 30, 36B7 (Tex. 2002)
(finding special relationship existed between facility and mentally impaired
patient and fact issue remained about whether facility could foresee danger in
allowing patient to visit his mother when child had history of criminal
mischief, evading arrest, theft, burglary, verbal and physical abuse to staff
and patients, seven assaults on students at his school including cutting one
student with a piece of glass, and brandishing a gun while trespassing on
private property); Isbell v. Ryan, 983 S.W.2d 335, 341 (Tex. App.CHouston [14th Dist.] 1998, no pet.) (finding CPS
letter to mother that there was reason to believe her son sexually abused a
cousin raised fact issue as to whether she owed a duty to warn family to
prevent his attack on stepsisters).





[7]  The Grandparents allege Huy was involved in home
robberies, and the gun used to kill Bac was stolen in one of these robberies.
To support this claim, they cite to a segment of Huy=s deposition that they failed to include in the
appellate record.  Although Khanh told police Bac had a small chrome handgun
and that Huy must have had access to it because Huy admitted to once finding
marijuana in Bac=s room (which Bac kept locked), there is no evidence
Huy ever knew about or had access to this gun.





[8]  Huy was approximately 5'1" and weighed 115
pounds; Bac was a few inches taller than Huy.





[9]  The Montana Supreme Court, in addressing this issue,
cited to Rodriguez in noting that most courts declining to adopt
section  316 of  the Second Restatement of Torts Ahave involved teenaged children and serious crimes like rape or murder.
. . .  The opinions rejecting ' 316 may thus
reflect at least in part a judicial disinclination to hold parents liable for
being unable to stop serious delinquency in older children.@  Crisafulli v. Bass, 308 Mont. 40, 38 P.3d
842, 845 (2001) (quoting Dinsmore-Poff v. Alvord, 972 P.2d 978, 981
(Alaska 1999)).  The court also pointed out that negligence in controlling one=s child should not, in and of itself, be grounds for
parental liability because this A>would
be extending the hardships of harassed and exasperated parents too far to hold
them liable for general incorrigibility, a bad education and upbringing, or the
fact that the child turns out to have a nasty disposition.=@  Id. (quoting Lanterman v. Wilson, 354
A.2d 432, 436 (Alaska 1976).